[No. 28877.  *En Banc.*  June 18, 1943.]

PIETRO ·CERENZIA, *Respondent,* v. THE DEPARTMENT OF
SOCIAL SECURITY, *Appellant.*[1]

*The Attorney General, Phil H. Gallagher, Pat Gui-
mont,* and *Thomas R. Waters, Assistants,* for appellant.

*Robertson & Smith,* for respondent.

JEFFERS, J.—In this proceeding, Pietro Cerenzia, for
many years a resident of Spokane, Washington, on
February 17, 1941, made application to the Spokane
county welfare department for a senior citizens grant.
This application was rejected by the department, May
19, 1941, on the ground that the applicant possessed a
resource in excess of that permitted by law.  On June
19, 1941, applicant requested a fair hearing, which re-
quest was granted, and a hearing was held on August

[1]Reported in 138 P. (2d) 868.

28, 1941. At the close of this hearing, counsel for the applicant requested that the hearing be left open, in order that he might further investigate the matter.

On March 3, 1942, the hearing was continued and concluded, and, on March 12th following, the director of the department of social security entered his findings and decision, wherein he denied the applicant's request for a grant, upon the ground that Mr. Cerenzia was possessed of a resource in excess of that permitted by law, in that he was the vendor under a contract of sale of real property in Spokane county, upon which there was a balance due of eleven hundred dollars, payable at the rate of one hundred dollars per year, with interest on deferred payments at six per cent per annum, which contract had a present cash value of eight hundred dollars.

Applicant appealed from the order of March 12th, to the superior court for Spokane county, where the decision of the director was reversed, and the department was directed to award to applicant a senior citizens grant of forty dollars per month, less the sum of one hundred dollars per year and interest at six per cent, to be deducted monthly from the grant, and to take effect as of the date February 17, 1941. The department has appealed from the judgment of the superior court.

The department assigns error on the conclusion reached by the trial court that respondent was eligible for a senior citizens grant when he had resources sufficient to meet his present needs, and in excess of that permitted by law. Error is also assigned upon the conclusion that the court had jurisdiction to fix the amount of assistance to be given respondent; in making the grant payable from February 17, 1941; and in entering judgment for respondent.

It is admitted by the department that respondent would be eligible for a senior citizens grant except for the contract above referred to.

Appellant contends that this salable contract constitutes a resource sufficient to take care of the needs of respondent, and his refusal to so use it makes him ineligible for a grant until he is again in need, as that term is defined by the law.

We quote the following from respondent's brief, as showing his theory:

"To narrow the question down, it would seem proper to determine whether the annual proceeds from applicant's contract would be considered as income or resources. If the latter, then the department may have been technically correct in holding the applicant had resources of greater value than those permitted by the statute, provided the department had authority to compel the applicant to sell the contract at an unconscionable discount. The trial court specifically found that the annual proceeds from the sale of the realty was not a resource under the statute, and that such were devoted to the purchase of foodstuffs for the applicant's family's exclusive use, and as such, was income within the statute."

We desire at the outset to say, in justice to the trial court, that, when this case was heard and decided, the case of *Morgan v. Department of Social Security*, 14 Wn. (2d) 156, 127 P. (2d) 686, had not been decided.

There is no dispute as to the facts in this case. Mr. Cerenzia, who was past sixty-five years of age at the time of making his application for a senior citizens grant, had lived in Spokane for many years. He owned his own home, where he lived with his wife and family. He had formerly owned thirty-five acres of land on Half Moon prairie, in Spokane county, which he had sold for eighteen hundred dollars, on contract, some time before making his application. He received two hundred fifty dollars as a down payment, and the balance was to be paid at the rate of one hundred dollars a year, with six per cent interest on deferred payments.

At the time of the decision of the director, there was still due on this contract eleven hundred dollars. While this matter was pending before the director, and before

his decision, Mr. Cerenzia had a cash offer of eight hundred dollars for the contract, which he refused to accept, claiming it was too great a discount. When these circumstances were made known to the director at the hearing, he denied Mr. Cerenzia's application, upon the theory, as heretofore stated, that applicant had available to meet his needs resources of the cash value of eight hundred dollars.

The statutes defining income and resources, as used in the act, applicable to senior citizens grants, will be found in chapter 1, p. 5, Laws of 1941, and in Rem. Supp. 1941, § 9998-34 *et seq.* Section 9998-36 defines various terms used in the act, and subsection (g) thereof defines income as follows:

" 'Income' shall mean regular or recurrent gains in cash or kind, excepting therefrom:

"(1) The value of the use or occupancy of the premises in which the applicant resides.

"(2) Foodstuffs, livestock, fuel, light or water produced by or donated to applicant or applicant's family exclusively for the use of applicant or applicant's family.

"(3) Casual gifts in cash which do not exceed $100 in any one year.

"(4) Casual gifts in kind which do not exceed $100 in any one year.

"(5) The proceeds from the sale of property which is not a resource, provided such proceeds are used for the purchase of property which is not a resource."

Subsection (h) defines resources as follows:

" 'Resources' shall mean any property which the applicant owns legally or beneficially, excepting therefrom:

"(1) The ability of relatives or friends of the applicant to contribute to the support of the applicant.

"(2) Insurance policies, the cash surrender value of which does not exceed $500.

"(3) The homestead, home or place of residence of applicant or the spouse of applicant.

"(4) Intangible property or personal property, the cash value of which does not exceed $200

"(5) The personal effects of the applicant, including clothing, furniture, household equipment and motor vehicle.

"(6) Foodstuffs, livestock, fuel, light or water produced by the applicant, applicant's spouse or family, exclusively for the use of applicant or applicant's family."

We stated in the *Morgan* case, *supra*:

"The support of the poor and needy is a recognized public governmental function. If the act by its terms purports to relieve persons not in actual need, it might well be challenged upon constitutional grounds, but while the 'declaration of intent,' *supra*, contains a statement, *arguendo*, that need is not the only, or the best, basis for an old-age pension, the latter portion of the declaration shows beyond question that the act as drawn operates for the benefit of persons 'without resources and income,' or upon a basis of need alone. Considering the entire act, we hold that no person who is not in need may be a beneficiary thereunder."

We also held in the *Morgan* case that initiative 141 was intended to be construed in connection with the Federal social security act, and is to a great extent dependent thereon. We stated that subparagraphs (g) and (h), § 3, of initiative 141 (being subsections (g) and (h), § 9998-36, Rem. Supp. 1941), were not in accord with the Federal act. We quote again from the *Morgan* case:

"The language of § 3 itself shows that the items which are excepted from income, and thereafter excepted from resources, including the ownership or occupation of a dwelling, are in fact income and resources, the statute providing, however, that such items shall not be considered when computing the amount of grants to persons entitled to the benefit of the act. The state statute, then, provides that certain income or resources shall not be considered, which items the Federal act says shall be considered, in fixing the amount of grants by the state agency which are to be matched by Federal funds."

After the passage of initiative 141, the authorities administering the Federal act refused to provide any matching funds as long as the state authorities applied the definition of income and resources, as given in initiative 141. The department then promulgated a rule or regulation in which the terms were defined as follows:

"The terms 'income' and 'resources' in connection with Senior Citizen Grants shall be given the same meaning as is ordinarily given to them in the administration of public assistance. Income and resources together will include all gains in cash or in kind coming to and *available* to the applicant. *All income* and *resources*, without substantial exception, shall be taken into consideration both in *determining* eligibility and in fixing the amount of the grant. This will include any and all cash income belonging to or received by the applicant and any regular contribution in cash or in kind received by the applicant." (Italics ours.)

We held in the *Morgan* case that the director was authorized to make the above rule under the authority given him by the statute. We specifically held the department correctly classified as resources the enjoyment of free fuel, light, and water, as well as the occupation of free living quarters, and, having so correctly classified these items, the department was justified in making a smaller grant to a recipient who enjoyed some or all of such resources than to a recipient who did not enjoy them.

We are not in this case concerned with any deduction made for the use of the home owned by respondent, or any other deduction specifically authorized by the *Morgan* case, but only with the contract. We think the department clearly was authorized to consider the contract in determining the eligibility of respondent. It seems clear to us that, if the question of whether the contract is a resource or income is to be determined by the annual payments to be made thereunder, it would be immaterial whether such payments

were considered as income or resources, as in neither case would the annual payments be sufficient to disqualify respondent from receiving a grant. However, we are satisfied that, under the facts in this case, the basis contended for by respondent is not a proper one. The department was justified in considering the contract as evidence of the ownership by respondent of the legal title to real estate, and that respondent's interest in the property had a present cash value of eight hundred dollars, which amount was available to respondent. When so considered, it seems to us the department correctly classified the contract as a resource available to respondent in excess of that permitted by the statute.

We are satisfied that the department was authorized to classify the contract as a resource, either under the rule promulgated by the department, or under the statutory definition of resources, or under the following definition given in Webster's New International Dictionary: "Pecuniary means; funds; money, or any property that can be converted into supplies; available means or capabilities of any kind."

It does not seem to us that the act contemplates that an applicant who owns a contract such as that here involved, having a present cash value of eight hundred dollars, which amount is available to the applicant, is in need. We make the foregoing statement, realizing that the present cash value of the contract is less than the amount still due thereon. Considerable is said in respondent's brief to the effect that it would be unconscionable to require respondent to sell the contract for eight hundred dollars when there is still eleven hundred dollars due. While we do not consider this contention material to a decision of the question presented, we may say that, when we consider that the contract had eleven years to run, it does not seem to us that the eight hundred dollar cash offer was unconscionable.

We do not desire to be understood as holding that a

contract such as here under consideration, but which had no present cash value which was available to a vendor applicant, should be considered as a resource.

In view of the conclusions reached, we deem it unnecessary to pass upon the other questions raised by appellant. We conclude that the department was justified in deciding that respondent was possessed of a resource in excess of that permitted by the statute, and because thereof he was ineligible to receive a senior citizens grant.

The judgment of the trial court is reversed, with directions to affirm the decision of the director.

SIMPSON, C. J., BEALS, MILLARD, STEINERT, ROBINSON and GRADY, JJ., concur.

MALLERY, J. (dissenting)—The reasoning of the majority opinion is that, if the annual payments on the contract were the basis for the decision, it would be immaterial whether they are income or resource, for in either case they are insufficient to disqualify the respondent from receiving a grant. It holds that the present cash value of the contract and not the annual income therefrom is the proper basis for determining whether it is a resource or an income. Therefore, since the present cash value of eight hundred dollars exceeds the amount of resources permitted an applicant, the grant must be denied.

With this, I cannot agree. The department is not the financial adviser for applicants for grants and must pass upon the applications in the light of the financial situation of the applicants as it finds them. Here, the respondent has a contract right to be paid annual payments for the land. His legal title is no more than a security for the performance of the vendee's obligation. If the vendee tenders his payments, the respondent must accept them and deliver his deed to the property.

I think that, because the respondent now has only the right to collect the annual payments, they are the

proper basis for classification, and hence respondent is entitled to a grant with the annual payments deducted therefrom.

BLAKE, J., concurs with MALLERY, J.