498 P.2d 571

John O. GRAHAM, Commissioner, State Dept. of Public Welfare, Arizona State Board of Public Welfare, Appellants and Cross Appellees,

v.

Jerry SHAFFER, for himself and his minor child, and for all others similarly situated, Appellees and Cross Appellants.

No. 2 CA-CIV 1100.

Court of Appeals of Arizona, Division 2.

June 29, 1972.

Rehearing Denied July 27, 1972.
Review Denied Sept. 26, 1972.

**498**

Gary K. Nelson, Atty. Gen., by Michael S. Flam and James B. Feeley, Asst. Attys. Gen., Tucson, for appellants and cross appellees.

Legal Aid Society by Peter D. Eisner, Tucson, for appellees and cross appellants.

HATHAWAY, Judge.

Appellees, plaintiffs in a special action filed in the Superior Court of Pima County, obtained relief from a ruling by the Arizona State Board of Public Welfare, terminating their public assistance grant under the Aid to Dependent Children (ADC) program. The board has appealed from that order.

Jerry Shaffer has custody of his 9 year old son pursuant to a divorce decree. He applied to appellants, who are charged with the distribution of ADC funds, and received benefits under the ADC program. These benefits were terminated June 1, 1971, when appellants determined that the child was not "dependent" within the meaning of the Social Security Act §

406(a), 42 U.S.C. § 606(a), and A.R.S. § 46-101, subsec. 6.

He appealed the grant termination and a hearing was held at the Pima County Department of Public Welfare. At the hearing it was determined that he was employable and that any deprivation to the child resulted from Mr. Shaffer's decision to limit his employment to a situation which would permit his child to accompany him on the job. This decision was based on his desire to personally look after his child. He refused free day care services offered by the state.

The hearing officer recommended that the termination of the grant be upheld. His recommendation was followed when the State Board of Public Welfare, acting through Commissioner John O. Graham, upheld the termination on June 10, 1971.

The special action was instituted in superior court to review the State Board of Public Welfare's ruling, the board's decision not being appealable pursuant to A.R.S. § 12-902, subsec. A. Allen v. Graham, 8 Ariz.App. 336, 446 P.2d 240 (1968).

In the special action complaint it was alleged and admitted in answer by defendants, that the termination was based upon the state board's policy requiring that:

". . . when there is no mother in the home, unless a father is medically eligible for public assistance, the child is not deprived of parental support and therefor ineligible for public assistance." Pursuant to A.R.S. § 46-291 and 46-292, as amended.

The decision was alleged to be arbitrary and in excess of the board's jurisdiction in that the defendant board's policy of denying public assistance to fathers and children living together without a mother, creates an arbitrary distinction between families with a mother and those without and denies the plaintiffs equal protection and due process of the law under the state and federal constitutions.

The cause was tried to the court and after testimony was presented by both sides

the court entered its order which included the following:

"It is the findings of the court that the minor child of the plaintiff has been deprived of parental support or care by reason of the continued absence of the home by a parent, and that the minor child of the plaintiff is a 'dependent child' within the meaning of § 3–401 of the ADC regulations and § 406(a) of the Social Security Act (42 U.S.C.A. § 606(a).

\* \* \* \* \* \*

It is the opinion of the court that there is no rational basis for distinguishing between a child otherwise eligible for said benefits and living with his father, and a child otherwise eligible and living with his mother, and that to so construe the above-mentioned statute and regulations would lead to an unconstitutional result by denying equal protection of the laws."

The court further found that the child was eligible for and entitled to ADC benefits and that the defendants, having no discretion to do so, denied benefits. A judgment was entered against the defendants declaring the plaintiff's minor child eligible for and entitled to ADC benefits, and ordering their restoration.

■ We must first consider whether appellee's child is a "dependent" child within the meaning of Social Security Act § 406(a), 42 U.S.C. § 606(a) and A.R.S. § 46–101, subsec. 6, as amended. The Social Security Act defines a dependent child as a

"needy child . . . who has been deprived of parental support or care by reason of the death, continued absence from the home, or physical or mental incapacity of a parent . . . ." 42 U.S.C. § 606(a).

The Arizona definition of "dependent child" is substantially the same with one pertinent addition:

"6. 'Dependent child' means a needy child under the age of twenty-one years who has been deprived of parental support or care by reason of the death, *un-*

*employment of the supporting parent as defined and prescribed by federal statutes relating to welfare,* continued absence from the home, or physical or mental incapacity of a parent . . . ." A.R.S. § 46–101, subsec. 6. (Emphasis added)

Appellants argue that to be considered "dependent," deprivation of parental support or care must arise by reason of the death, continued absences or mental or physical incapacity of a parent. Thus, it is submitted that the source of the deprivation is a controlling factor in determining dependency, and deprivation alone is not sufficient. It is further submitted that the Shaffer child's deprivation does not arise from one of the allowable statutory sources and therefore he is not dependent as defined by the statutes.

It is most enlightening to analyze the reasons given for the enactment of the AFDC program and to study the specific problems it was enacted to solve. The Senate Committee, in its reports preceding the enactment of the AFDC program, pointed out that the program was *not* intended to protect all needy children. The report stated that "many of the children included in relief families present no other problem than that of providing work for the breadwinner of the family." S.Rep. No. 628, 74th Cong., 1st Sess. 17 (1935). From this statement it can be implied that the foregoing group of children mentioned was not the group which the legislation was designed to help. This group could be taken off the "needy" rolls by providing employment for the breadwinner. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L. Ed.2d 1118 (1968).

The Supreme Court in King v. Smith, supra, stated the reasons for the enactment of the AFDC program as follows:

"The AFDC program was designed to meet a need unmet by programs providing employment for breadwinners. It was designed to protect what the House Report characterized as '[o]ne clearly distinguishable group of children.' H.R.

Rep. No. 615, 74th Cong., 1st Sess., 10 (1935). This group was composed of children in families without a 'breadwinner,' 'wage earner,' or 'father,' as the repeated use of these terms throughout the Report of the President's Committee, Committee Hearings and Reports and the floor debates makes perfectly clear. *To describe the sort of breadwinner that it had in mind, Congress employed the word 'parent.'* 49 Stat. 629 as amended, 42 U.S.C. § 606(a). A child would be eligible for assistance if his *parent* was deceased, incapacitated or continually absent." (Emphasis added) 392 U.S. at 2139, 88 S.Ct. 2128 at 2139.

■ The quoted language aligns the case sub judice with the excluded category specifically mentioned in the Senate Committee report. Congress did not intend for the family with an unemployed "breadwinner" to be covered by this specific program (AFDC) unless he came under one of the disabilities mentioned in 42 U.S.C. § 606(a); Congress clearly implied that assistance would be granted needy families whose need arose from unemployment of the "breadwinner," by providing employment for the breadwinner. King v. Smith, supra.

This reasoning is further supported by the fact that Congress, subsequent to the enactment of 42 U.S.C. § 606(a), enacted a new program under the Social Security Act which provided that children whose need resulted from the unemployment of the supporting parent would also be entitled to assistance if the state chose to enact this addition to the program. 42 U.S.C. § 607.

The distinction between the federal definition of "dependent child" and the Arizona definition is interesting. The legislature of this state has seen fit to include in the statutory definition of "dependent child," a child who is "needy" and who has been deprived of parental support or care by reason of the unemployment of the supporting parent. A.R.S. § 46–101, subsec. 6. This particular provision is an addition to the provisions set out in 42 U.S.C. §

606(a). The Arizona statute makes unemployment a factor in determination of eligibility for AFDC assistance. The clear language of the statute points up appellants' error in their contention that only three factors should be considered in determining eligibility for assistance, i. e., death, continued absences or mental or physical incapacity of a parent. Unemployment must also be considered.

■ Reference should be made at this point to the admitted policy of special treatment for fathers with children, upon which the State Welfare Board predicated its decision. The policy in question is a nullity, being in direct contravention of Arizona statute A.R.S. § 46–101, subsec. 6, and was an improper basis for the board's mandate, although we conclude that the termination of assistance should be upheld on other grounds. The requirement that a father be medically eligible for public assistance before a child is considered dependent is an attempt to delete deprivation by unemployment of the supporting parent and require disability of that parent as a factor in determining dependency. Such attempted repeal and amendment of the statute is beyond the jurisdiction of the welfare board and is in gross disregard of the clear language of the statute. The prerogative to change the statutory language is exclusively the legislature's.

The Arizona statute, A.R.S. § 46–101, subsec. 6, does not itself define unemployment but instead adopts the word unemployment as "defined and prescribed by federal statutes relating to welfare." Before proceeding to make a determination regarding appellee's qualification as "unemployed," it is necessary to point out that it is undisputed that Mr. Shaffer has been the supporting parent of the child. We must look to the whole scheme of the federal statutes in order to determine what prescriptions Congress has set forth in defining unemployment. The federal statutes unequivocally point out that AFDC benefits are not provided to a child where the unemployed parent refuses to accept employment without good cause. Trull v.

District of Columbia Dept. of Pub. Welfare, 268 A.2d 859 (D.C.App.1970).

Appellee's refusal to accept free day care services offered by the state has precluded his acceptance of immediate employment. Nor can he impose his personal standards of acceptable employment, thereby causing the dependency of his child to await his decision with reference to whether available employment is suitable. We must therefore hold that appellee does not qualify as an unemployed supporting parent because he has made himself unavailable for employment. We believe appellants' comment is apropos: "The child has not been deprived of a wage-earning parent—the wage-earning parent has deprived the child."

Based upon the foregoing reasons, it is our determination that the child is not a "dependent child" as defined by A.R.S. § 46–101, subsec. 6, and is therefore not entitled to assistance under the AFDC program in Arizona. Our conclusion makes unnecessary consideration of the equal protection question or the issue raised on cross-appeal.

Reversed.

KRUCKER, C. J., and HOWARD, J., concur.