501 P.2d 964

Sally John BEGAY, for herself and for and on behalf of her minor children, Edward Begay, Dodson Begay, Anna Begay, Howard Begay, Doris Begay and Gary Begay; and Roberta Blackgoat for herself and for and on behalf of her minor children, Danny Blackgoat, Harry Blackgoat, Vivian Blackgoat and Betty Blackgoat, Appellants,

v.

John O. GRAHAM, as Commissioner for the Arizona State Department of Public Welfare, and the STATE BOARD OF PUBLIC WELFARE, and the Arizona State Department of Public Welfare, Lucille Moser, Coconino County Welfare Director, and Charles O. Tilson, Navajo County Welfare Director, Real Parties In Interest, Appellees.

No. 1 CA–CIV 1732.

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 10, 1972.

C. Benson Hufford, Jr., Tuba City, and Michael Serwatka, Chinle, for appellants.

Gary K. Nelson, Atty. Gen., by James B. Feeley, and Michael S. Flam, Asst. Attys. Gen., Phoenix, for appellees.

HAIRE, Chief Judge, Division 1.

On this appeal the appellants contend that they have been improperly denied certain surplus commodity assistance and assistance to dependent children because of the wrongful interpretation by the appellee State Department of Public Welfare of the pertinent statutes and regulations governing eligibility for such assistance. Specifically appellants contend that under the provisions of A.R.S. § 46–292, subsec. 4, par. d, the amount of existing liens and encumbrances must be subtracted in valuing their assets for assistance eligibility purposes, so that only their equity interest is considered, thus making them eligible for assistance.[1]

Procedurally, appellants, after exhausting their administrative remedies, brought a petition for a writ of certiorari or in the alternative, mandamus or prohibition, in the Coconino County Superior Court raising the above question, and seeking a determination that they had been wrongfully denied assistance. The appellees do not question the propriety of a review of the state board's ruling by special action remedies. In this connection *see* Graham v. Shaffer, 17 Ariz.App. 497, 498 P.2d 571 (1972); Camerena v. Department of Public Welfare, 106 Ariz. 30, 470 P.2d 111 (1970); Jones v. Lopez Plascencia, 10 Ariz.App. 253, 458 P.2d 120 (1969). The Superior Court refused to grant appellants any relief.

Since there is no dispute as to the facts, they will be presented in summary fashion without specific valuation figures. Both Mrs. Begay's and Mrs. Blackgoat's "other property" (see A.R.S. §. 46–292, subsec. 4,. par. d *infra*) had *gross* valuations in excess of $1200. However, if the amount of the outstanding liens against this "other property" had been subtracted, then the value would have fallen well below the $1200 maximum. In all other respects, appellants were qualified to receive the assistance requested.

---

1. While A.R.S. § 46–292 deals only with eligibility requirements for assistance to dependent children, the parties agree that the regulations for certification for surplus commodities are "to the same effect". Therefore in this opinion we will consider our discussion of the provisions of A.R.S. § 46–292 as also being dispositive of the surplus commodity assistance question.

A.R.S. § 46–292, subsec. 4, provides as follows:

"Assistance shall be given under this title to any dependent child:

\* \* \* \* \* \*

"4. Whose parent or parents or persons legally responsible for the child's support does not have *resources* in excess of the following:

"(a) Household furnishings used by the recipient and his family in his usual place of residence.

"(b) Wearing apparel and necessary personal effects.

"(c) Homestead property and the land contiguous thereto, which has a fair market value not in excess of eight thousand dollars.

"(d) *Other property or assets having a total fair market value of eight hundred dollars for a single recipient or twelve hundred dollars for a recipient and spouse, or two or more recipients in a single household.* Not more than four hundred dollars of the other property or assets for a single recipient or six hundred dollars for a recipient and spouse or two or more recipients in a single household shall be in cash, bonds or negotiable securities.

"(e) Tools of his trade in an amount not to exceed two hundred fifty dollars." (Emphasis added).

The administrative interpretation placed upon these statutory valuation provisions as contained in the department's regulations *at the time assistance was denied to appellants* required that the "fair market value" of this "other property" be determined without regard to any liens or encumbrances against the property. During the progress of this litigation, the department obtained an attorney general's opinion to the effect that the term "fair market value" of "other property" as used in the above-quoted statute meant the fair market value of the *owner's interest* in the property after deduction of the amount of the outstanding and unpaid liens or encumbrances against the property. Opinion, Attorney General, No. 69–25 (R–98) September 30, 1969.

We find the reasoning of the cited attorney general's opinion persuasive, and adopt the portions quoted below as the opinion of the Court:

"The administrative interpretation presently placed on these provisions [A. R.S. § 46–292 and other similar statutory provisions] by the Department of Public Welfare is to consider fair market value without consideration of any lien, mortgage or encumbrance. See, e. g., Family Services Manual, §§ 3–1105.3.G and 3–1105.6.G. The administrative interpretation has not always been the same. In 1957, the Department's regulations reflected that only the balance of the equity in the property would be considered in determining eligibility. See Public Assistance Manual, Arizona Department of Public Welfare, § 3–312.6.A, April, 1957, where it was provided:

'The value of the home may not exceed $8,000.00, or if mortgaged, the value of his or her equity cannot exceed this amount. . . . Equity is determined by deducting the balance of the mortgage from the fair market value of the property.'

This interpretation was apparently in effect, at least with respect to the homestead, until 1965. F S Transmittal 66, May 12, 1965.

"Four of the five welfare assistance programs are federally assisted; namely, the old age assistance, aid to the blind, aid to the permanently and totally disabled, and aid to dependent children. In case of conflict between the state law and the federal Social Security Act, the federal law prevails. A.R.S. § 46–311; King v. Smith, 392 U.S. 309, 88 S.Ct. 2128 [20 L.Ed.2d 1118] (1968).

"The Social Security Act provides that state plans must provide that the state agency shall take into consideration, in determining need, 'any other income and resources of an individual'. 42 U.S.C. §

302(a)(10)(A), § 602(a)(7), § 1202(a)(8), § 1352(a)(8).

"The term 'resources' has been administratively interpreted by the Department of Health, Education & Welfare to mean 'currently available resources'. 45 C.F.R. § 233.20(a)(3)(iic). The Social Security Act also provides that one of the purposes of the assistance programs is to help recipients 'attain or retain capability for self care'. 42 U.S.C., § 301(c), § 601, § 1201, § 1351.

■ "The federal courts, in interpreting the Social Security Act, have tended to construe its provisions liberally in favor of those seeking its benefits. See, e. g., St. Luke's Hospital Ass'n of Cleveland v. United States [6 Cir.], 333 F.2d 157, cert. den. 379 U.S. 963 [85 S.Ct. 652, 13 L.Ed.2d 557] (1966); Taylor v. Ribicoff, 196 F.Supp. 774 (D.C.S.C. 1961). It seems reasonably clear that the Social Security Act should be interpreted as requiring consideration in determining need of welfare assistance applicants and recipients of only such income and resources as are currently available. The current available fair market value of an automobile with a 'blue book' value of $500.00, and with a security interest against it of $500.00, is zero.

■ "The same conclusion can be reached under ordinary principles of statutory construction. A.R.S. § 1–211.B [1–211, subsec. B] provides, 'Statutes shall be liberally construed to effect their objects and to promote justice.' Administrative construction of a statute is entitled to considerable weight in interpreting it. Van Veen v. Graham County, 13 Ariz. 167, 108 P. 252 (1910); Police Pension Board v. Warren, 97 Ariz. 180, 398 P.2d 892, reh. den. 97 Ariz. 301, 400 P.2d 105 (1965). However, greater emphasis is placed on administrative interpretation in cases where the public has relied upon such interpretation and made extensive investments as a result. Chee Lee v. Superior Court, 81 Ariz. 142, 302 P.2d 529 (1956); Conway v. Mosher, 55 Ariz. 467, 103 P. 2d 465 (1940). In this instance it cannot be said that the present administrative interpretation of the welfare eligibility statutes has resulted in reliance by the public with resulting investments. Furthermore, the administrative interpretation has differed through the years, as noted hereinabove. In any event, a statute cannot be changed by administrative regulations. Arizona Power Company v. Stuart, 212 F.2d 535 (C.A.[9] 1950).

"The term 'resources' is defined in Webster's New International Dictionary as:

'Available means, as of a country or business; computable wealth in money, property, products, etc.; immediate and possible sources of revenue; . . . .'

The term is defined in 77 C.J.S., p. 316, as:

'[M]oney or any property which can be converted into supplies; available means or capability of any kind; . . . means of raising money or supplies. . . .'

"Other jurisdictions have held that the term 'resources' means the present cash value of the property to the owner. Cerenzia v. Department of Social Security of Washington, 18 Wash.2d 230, 138 P.2d 868 (1943).

"Furthermore, the Arizona courts have interpreted the language 'not exceeding eight thousand dollars in value', as used in the homestead exemption statute, A.R.S. § 33–1101, as meaning the value arrived at by subtracting the amount of the mortgage from the fair market value of the property. Seaney v. Molling, 62 Ariz. 81, 153 P.2d 532 (1945). It is not unreasonable to assume the Legislature intended a similar effect to be obtained under the welfare eligibility statutes.

\*    \*    \*    \*    \*    \*

■ "Based on the foregoing, it is our opinion that the term 'fair market value' of resources as used in the various state

welfare eligibility statutes means the fair market value of the owner's interest in the property after deduction of the amount of the outstanding and unpaid mortgage, lien, encumbrance or security interest."

■ After receiving the above opinion from the attorney general, the department changed its regulations so as to conform thereto, thus apparently solving appellants' problems, at least prospectively. However, appellants contend that such a departmental change does not moot the question before the Court as there are still issues to be resolved. First, they contend that they are entitled to have the stamp of judicial construction placed upon the above-quoted statute so as to prevent future administrative fluctuations in interpretation, and second, that they are entitled to judgment for the amounts they should have received during the period that assistance was wrongfully denied to them. As to the first contention, we would hesitate to construe the statute if all that were involved was a mere possibility of future fluctuations in administrative interpretation. However, we note that in the briefs filed in this Court the department's attorneys still contend that the department's prior interpretation of the statute was correct. Under these circumstances we believe that the need for certainty in the law overcomes any otherwise existing notions of mootness, and therefore have construed the statute as above set forth.

As to appellants' second contention, we recognize that appellants were qualified for welfare assistance at the time of their original applications for assistance. Being qualified, they had the *right* to receive welfare assistance. King v. Smith, 392 U. S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Shapiro v. Thompson, 394 U.S. 618, 89

S.Ct. 1322, 22 L.Ed.2d 600 (1969). Several courts have considered this question and have awarded successful welfare litigants judgment for the amounts which should have been paid during the period of deprivation. *See* Alvarez v. Hackney, cch Pov. L.Rep. [1968–1971 Transfer Binder] § 10,491, at 11,395 (W.D.Tex.1969); Brooks v. Yeatman, 311 F.Supp. 364 (M.D.Tenn. 1970); Baxter v. Birkins, 311 F.Supp. 222 (D.Colo.1970); Ferguson v. Noe, 364 S. W.2d 650 (Ky.1963); Hogue v. Commissioner of Economic Security, 407 S.W.2d 437 (Ky.1966). Such awards have not been unanimous, as other courts have refused to grant judgment for the period of deprivation. *See* Robinson v. Hackney, 307 F.Supp. 1249 (D.C.1969); Westberry v. Fisher, 309 F.Supp. 12 (D.C.1970).

■ Where an intolerable financial burden would be placed upon the appellee public agencies, courts are hesitant to place the stamp of retroactivity upon an opinion. *See* Southern Pacific Company v. Cochise County, 92 Ariz. 395, 377 P.2d 770 (1963). However, we do not perceive that any such problem is here encountered. While this action purported to be a class action proceeding in the Superior Court, no appeal has been taken on behalf of the class.[2] Therefore, we are *directly* concerned only with the rights of appellants—rights which the department, in accordance with the above-quoted opinion of the attorney general, has recognized as valid some three years prior to the issuance of this opinion. By their very nature welfare assistance programs are designed to meet the *present needs* of qualified applicants. Here, in view of the absence of any indication of arbitrary action on the part of the department and considering the funding difficulties which this public agency would incur were we to give retroactive effect to this opinion, we hold that this opinion shall be prospective in operation only, both as to

2. The notice of appeal reads as follows:
    "NOTICE IS HEREBY GIVEN that the above named SALLY JOHN BEGAY AND ROBERTA BLACKGOAT, for themselves and on behalf of their minor children appeal to the Court of Appeals, Division One, State of Arizona, from the order made and entered in the above entitled Court in the above entitled action on the 22nd day of February, 1971 . . . . "

appellants and all others affected thereby. In this connection we note from the record that appellants are represented by attorneys employed with federal funds, and therefore it is quite probable that appellants have incurred no expense in this litigation.

Having decided that the state statute must be construed in accordance with appellants' contentions, and Opinion No. 69–25 of the Arizona Attorney General, it is unnecessary to consider the constitutional arguments advanced by appellants.

As modified by this opinion, the judgment of the trial court is affirmed.

EUBANK and JACOBSON, JJ., concur.