[Civ. No. 40811. Second Dist., Div. One. June 13, 1973.]

LOUIE P. WHEAT et al., Plaintiffs and Respondents, v.
JAMES M. HALL, as Secretary, etc., et al., Defendants and Appellants.

## Counsel

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, Edward M. Belasco and Jerold A. Prod, Deputy Attorneys General, for Defendants and Appellants.

Daniel S. Brunner, Valerie Vanaman, Craig H. Scott, and Richard M. Pearl for Plaintiffs and Respondents.

## Opinion

**THOMPSON, J.**—This is an appeal by representatives of the California Human Relations Agency and Department of Social Welfare from a preliminary injunction prohibiting enforcement by the state of specified standards of eligibility for welfare. We reserve the order granting the preliminary injunction and remand the matter to the trial court for further proceedings.

Respondents are recipients of or applicants for benefits provided by Old Age Assistance (OAS), Aid to Families with Dependent Children (AFDC), or Aid to the Totally Disabled (ATD). OAS, AFDC, and ATD are "categorical assistance programs" established by the Federal Social Security Act and administered by the State of California utilizing both federal and state funds.

Effective November 1, 1971, appellant Robert B. Carleson, Director of the Department of Social Welfare, adopted Eligibility Assistance Standards

(EAS) Manual section 42-207(d) which states that OAS, ATD, and AFDC "shall not be granted or paid" where the recipient "owns household furnishings valued, without regard to encumbrances, in excess of $1,500" or "owns any item used to provide, equip, and maintain a household when such item is valued, without regard to encumbrances, in excess of $300." For the purpose of section 42-207(d) "items used to provide, equip and maintain a household shall be limited to the following: stove, refrigerator, clothes washer, clothes dryer, dishwasher, air conditioner, space heater, television set, phonograph, radio, kitchenware, all appliances, and cleaning and gardening equipment. All other items in the household, except for jewelry, heirlooms, clothing, motor vehicles, campers, trailers, boats, musical instruments and recreational equipment shall be considered as household furnishings."

In late 1971 and early 1972, each respondent was notified that his welfare aid was being discontinued or denied for failure to comply with the standard established by section 42-207(d) because of his ownership of a television set valued, without regard to encumbrances, in excess of $300. Each set was in fact encumbered and, if encumbrances were taken into account, would be worth less than $300.[1] Seeking a declaration that section 42-207(d) is invalid and restraint of its application, respondents, on behalf of themselves and a class of persons similarly situated, filed an action in the superior court. On motion of respondents, the trial court granted a preliminary injunction restraining appellants from "Taking any action . . . which would result in denial or termination of public assistance benefits under any category of aid pursuant to EAS Manual § 42-207(d): (a) insofar as said Section values personal property without regard to encumbrances, and (b) insofar as said Section results in denial or termination of public assistance benefits without regard to the personal property exemptions required by Welfare and Institutions Code §§ 11154, 11155 and 11257."

Stating that section 42-207 is in the process of being modified to provide for personal property exemptions required by various statutes dealing with welfare, appellants in effect concede the propriety of the second ("(b)") portion of the trial court's injunction. They contend, however, that they are improperly restrained from valuing personal property of welfare recipients without regard to encumbrances in determining the $1,500 "household furnishings," $300 item, and $1,000 general personal property limi-

---

[1]Declarations filed by respondents and not contraverted by appellants establish that as of the date of this appeal the value of the television sets, without regard to encumbrances, is less than $300. No issue is made of that fact by any party to this appeal.

tations applicable to property owned by welfare recipients over and above that permitted by other statutory reserves.

The portion of section 42-207(d) which is at issue on this appeal is valid only if it complies both with state law and with federal statutes and regulations dealing with categorical assistance programs. (*County of Alameda* v. *Carleson,* 5 Cal.3d 730, 738-739 [97 Cal.Rptr. 385, 488 P.2d 953].) The state may, however, set "the level of benefits and the standard of need." (*King* v. *Smith,* 392 U.S. 309, 334 [20 L.Ed.2d 1118, 1135, 88 S.Ct. 2128].)

## Federal Statutes and Regulations

The pertinent portion of section 42-207(d) is compatible with federal statute and regulation. A state plan for OAS (42 U.S.C. § 302(a)), AFDC (42 U.S.C. § 602(a)), and ATD (42 U.S.C. § 1352) must ". . . provide that the State agency shall, in determining need, take into consideration any other family income and resources" of the recipient. (42 U.S.C. § § 302(a)(10)(A), 602(a)(8), 1352(a)(8).) Regulations of the Department of Health, Education, and Welfare implementing the federal statute provide in 45 Code of Federal Regulations section 233.20: "A State Plan for OA[S], AFDC, [or] A . . . TD . . . must, as specified below: (1) . . . Provide that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis and all types of income will be taken into consideration in the same way, . . . (2) . . . (i) Specify a statewide standard, expressed in money amounts, to be used in determining (a) the need of applicants and recipients and (b) the amount of the assistance payment. . . . (3) *Income and Resources:* OA[S], AFDC [and] A . . . TD . . . (i) Specify the amount and types of real and personal property, including liquid assets, that may be reserved, i.e., retained to meet the current and future needs while assistance is received on a continuing basis. In addition to the home, personal effects, automobile and income producing property allowed by the agency, the amount of real and personal property, including liquid assets, that can be reserved for each individual recipient shall not be in excess of two thousand dollars. . . . (ii) Provide that, in establishing financial eligibility and the amount of the assistance payment: (a) All income and resources, after policies governing the allowable reserve, disregard or setting aside of income and resources have been applied, will be considered in relation to the State's standard of assistance, and will first be applied to maintenance costs; . . . (c) only such net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered, . . ."

Section 42-407(d) is part of a California assistance plan which takes into account resources of the recipient as mandated by the governing federal statute. As required by the applicable federal regulation, the plan provides for the determination of need for all applicants upon an objective and equitable basis specifying a statewide standard expressed in money amounts. The standard, specifying amounts and types of property which will disqualify an individual from receiving welfare benefits, is totally objective. It loses none of its objectivity in valuing some types of personal property without regard to encumbrances. So also the California plan is not inequitable because of its method of valuation. In essence, a recipient of OAS or ATD in California is entitled to receive welfare payments although he owns: real or personal property "without reference to its value" if "it serves to provide [him] with a home" (Welf. & Inst. Code, § 11152); plus income-producing real property up to an assessed value of $5,000 as determined by the county assessor (Welf. & Inst. Code, § 11153.7); plus any combination of personal or real property not to exceed $1,200 or, in the case of a married couple both receiving public assistance, $2,000, "[a]ny real property held as such reserve [to] be valued at its net appraised market value" (Welf. & Inst. Code, § 11154); plus personal property other than cash, securities, or evidences of indebtedness of a market value of $1,000 (Welf. & Inst. Code, § 11155); plus wedding and engagement rings, heirlooms, and clothing regardless of value, household furnishings of a value of $1,500 without regard to encumbrances, and property used to provide, equip, and maintain a household to a market value of $300 for each item computed without regard to encumbrances (Welf. & Inst. Code, § 11155, and EAS Manual § 42-207(d)); plus equipment and material of a reasonable value including motor vehicles necessary to implement employment, rehabilitation or self-care plan (Welf. & Inst. Code, § 11155). In view of the nature and amounts of property that may be possessed by a recipient of OAS or ATD, we cannot conclude that a requirement that the determination of the value of some of it must be made without regard to encumbrances is inequitable.

AFDC is available to a recipient if he or his family owns real property of an assessed value less encumbrances of $5,000 as determined by the county assessor (Welf. & Inst. Code, § 11255) plus personal property of a "total value" of $600 (Welf. & Inst. Code, § 11257); plus the various property specified in Welfare and Institutions Code section 11155 and EAS Manual section 42-207(d) as listed. In view of that group of properties, the requirement that the value of some of them must be determined without regard to encumbrances is not inequitable to a recipient of AFDC.

The California plan of assistance, as encompassed in the Welfare and

Institutions Code and amplified by EAS section 42-207, specifies the amount of real and personal property including liquid assets that may be reserved by a recipient. It comports with the $2,000 limitation of the federal regulations. The plan provides that all income and resources, after setting aside the allowable reserve, will be considered in relation to California's standard of assistance. Finally, the plan including section 42-207(d) considers only such net income as is actually available for current use on a regular basis and only currently available resources.

Respondents argue here, as they did in the trial court, that section 42-207(d) is fatally at variance with the federal regulations because "resources currently available" means resources currently convertible into cash. Thus, contend respondents, only so much of an asset as represents its net value after deduction of encumbrances is "currently available." The argument is a strained one. If the draftsmen of the regulations had intended that the method of valuation be net after deducting encumbrances, they could easily have said so. In the normal meaning of the phrase, an asset is "currently available" when its owner can use it for its intended purpose. Availability is unaffected by an encumbrance unless it is foreclosed.

The authority cited by respondents in support of their contention that the current availability of assets is to be given an artificial interpretation by reason of the nature of welfare is unpersuasive.

Respondents rely upon section 3122 of Handbook of Public Assistance Administration, published by the Department of Health, Education, and Welfare. While noting at the outset that there is a question of the continued vitality of that section in view of the enactment of subsequent federal regulations in the same area, we assume the applicability of section 3122 of the handbook to the case at bench. That section provides: "With regard to loans made to applicants or recipients, where the nature of the loan is such that the principal is not available for current maintenance, it does not represent income or a 'resource' to be taken into account against current living costs as computed for purposes of determining the public assistance payment. When the loan constitutes a debt and the property purchased with the proceeds cannot be converted for current maintenance, *it* does not represent a 'resource' to be included in determining property 'reserves.' Typical of such loans would be those which are under conditions specified by the creditors as to purchases that may be made, purposes to be fulfilled, or other controls which preclude the recipient from using the funds to meet his current living costs. Loans made by the Farmers Home Administration, U. S. Department of Agriculture, under title III of the Economic Opportunity Act come within the above classification." (Italics added.)

The underscored "it" seems clearly to refer to "loan" as the subject of the sentence and not to "property purchased," the second subject of the dependent clause.

Section 3122 of the Handbook deals primarily with the treatment of loans and not with the status of assets acquired. While, pursuant to the terms of the section, a loan which is not in the form of cash generally available to the recipient cannot be treated as a resource, there seems nothing in the section which limits the general right of a state to determine the type and value of property which a welfare recipient or applicant may own as a condition to his right to assistance payments. In the context of the matter at bench, the State of California could limit the resources available to a welfare recipient or applicant to the reserves provided by sections of its law other than Welfare and Institutions Code section 11155. Since it has that power, it has the right also to determine the valuation of additional permitted property so long as the method employed is reasonable. (45 C.F.R. § 233.20(a)(3)(ii)(e).) Here, it is. Having initially provided for general reserves of considerable substance, the California statutory and regulatory scheme allows additional personal property to be acquired but provides that when the additional property reaches a level where it provides to the welfare recipient a standard of living that may exceed that enjoyed by most of the nonwelfare population of the state, the right to tax-subsidized assistance terminates.

The federal regulations themselves rebut the premise relied upon by respondents and the trial court. 45 Code of Federal Regulations section 233.20 states in pertinent part that the state plan must "Specify the amount and types of real and personal property, including liquid assets, that may be reserved." "Liquid assets," those that are convertible to cash, are only one of the types of property that may be specified in the reserve. It is significant that, in the face of that precise directive to the states, neither the federal regulations nor the handbook mention property acquired on a conditional sales contract. It is inconceivable that the draftsmen of those directives were unaware of the great numbers of such purchases by consumers, including those on welfare.

Federal decisional law cited by respondents is inapplicable to the situation here before us. They rely primarily upon cases such as *King* v. *Smith, supra,* 392 U.S. 309, and *Lewis* v. *Martin,* 397 U.S. 552 [25 L.Ed. 2d 561, 90 S.Ct. 1282], which hold that the income and resources of a recipient of AFDC may not be deemed to include income or resources of a "substitute father" or "man assuming the role of spouse" who is not legally obligated to support the child whose need is the determinant of

assistance. *King* and *Lewis,* however, are rationalized principally by the proposition that it is unreasonable to treat as income available to the recipient of aid that which is not legally available to him. There is the additional factor in those cases that denial of federally subsidized welfare may not be used to promote a state's conceived interest in the "morality" of its residents. Here we deal with property that is legally available to the recipient and no question of public morals.

The same distinction applies to *Wilczynski* v. *Harder* (D.Conn. 1971) 323 F.Supp. 509, which invalidated a state Medicaid regulation valuing insurance policies at face rather than cash surrender value. (Cf. Welf. & Inst. Code, § 14006.) The regulation there employed a patently unreasonable method of valuation. Face value of an insurance policy is merely an expectation. It was not available to the policyholder unlike the property here valued which is available for use despite an encumbrance upon it. *Wilczynski* does not hold, as inferred by respondents, that valuation of insurance on the basis of cash surrender value without regard to loans against the policy would be inappropriate if ownership of the policy were permitted as part of a plus factor over and above other reserves. *Green* v. *Barnes* (N.D. Okla. 1972) —— F.Supp. ——, does hold that real property used to determine the eligibility of its owner for welfare must be valued net after encumbrance. There are no reasons articulated for the conclusion so that the decision is unpersuasive. Moreover, at argument, counsel for respondents conceded that federal regulations dealing with ownership of real property are materially different from those dealing with personal property.

Other decisional law cited by respondents to the effect that encumbrances must be disregarded in valuing personal property is a series of New Mexico cases exemplified by *Trujillo* v. *Health & Social Services Department,* 84 N.M. 58 [499 P.2d 376], and *Benally* v. *Heim,* 84 N.M. 131 [500 P.2d 416], a trial court decision of the Sacramento Superior Court in Rojas *v.* Carleson, No. 217562, and an Arizona decision in *Begay* v. *Graham,* 18 Ariz.App. 336 [501 P.2d 964]. *Trujillo* and *Benally* are decided upon an interpretation of governing New Mexico regulations and are hence unpersuasive. Rojas, a trial court decision, is not binding upon us. *Begay* does discuss the issue involved in the case at bench and relies heavily upon an opinion of the Arizona Attorney General in reaching a result contrary to our conclusion. The Arizona decision is, of course, not binding on us, and we find its reasoning unpersuasive. It is significant that in *Begay,* the only opposition to the construction adopted by the court was that presented by the Attorney General whose formal opinion contrary

to his brief was published while the case was pending. That the Arizona court had the benefit of the adversary process is a matter of great doubt.

Lastly, respondents argue that the pertinent provision of the EAS Manual is in conflict with the "Money Payment Principle." 45 Code of Federal Regulations section 234.11(a) states: "Money payments are payments in cash, checks, or warrants immediately redeemable at par, made to the grantee or his legal representative with no restrictions imposed . . . on the use of funds by the individual." (See also Welf. & Inst. Code, § 10501.) Respondents contend that to value personal property acquired by a welfare recipient without regard to encumbrances on the property violates the principle established by section 234.11(a) by restricting the use that may be made of funds paid as assistance.

The restriction, if there is any, is not the type contemplated by section 234.11(a). There is no direct restriction upon the use of welfare payments; the recipient may use them for any purpose he sees fit. What restriction there exists is indirect in that once the welfare recipient has used assistance funds to accumulate property beyond that which the statute and California regulations allow, he is no longer eligible for assistance. His use of funds to acquire excess personal property on conditional sales contract or subject to other encumbrance is as if the welfare recipient accumulated cash or invested wisely so as no longer to meet the property ownership requirements.

### California Statutes

██ The portion of EAS Manual section 42-207(d) not conceded to be invalid by appellants comports with the California statutory scheme. Property ownership limitations upon qualification for welfare are contained in Welfare and Institutions Code sections 11150 through 11158, 11255, and 11257. Section 11152 permits recipients of OAS and ATD to own a home regardless of value. Section 11153.7 permits those recipients to own income-producing real property "in an amount not to exceed an assessed valuation of five thousand dollars . . . as assessed by the county assessor." Section 11154 states that a recipient of OAS or ATD "may retain as a reserve for future contingencies any combination of personal or real property not to exceed a *total value* of one thousand two hundred dollars . . . . Any real property held as such reserve shall be valued at its *net appraised market value.*" (Italics added.) Section 11155, applicable to recipients of OAS, ATD, and AFDC, states that in addition to the other permitted property the recipient may retain personal property other than cash and securities "of a *market value* not to exceed one thousand dollars . . ." and in addition "[t]he *entire value* of wedding and engage-

ment rings, heirlooms and clothing," the *"reasonable value* of household furnishings," and "other property used to provide, equip and maintain a household . . . up to a *market value* of three hundred dollars . . . for each item." (Italics added.) The recipient may also own "equipment and material of a *reasonable value,* including motor vehicles, which are necessary to implement an employment, rehabilitation or self-care plan" and "[a]ny property right which is essential to land use or which is not available for . . . use . . . *or* expenditure . . . to meet a current or future need . . . ." (Italics added.) Section 11158 excludes from consideration burial insurance and contracts. Section 11255, applicable to recipients of AFDC, permits the ownership of real property of a *"combined assessed value . . . less all encumbrances"* (italics added) not exceeding $5,000.

We deal here with the meaning of the phrase "market value" as it is used in section 11155. In normal usage, market value is the price for which an item will be sold by a willing seller to a willing buyer in the market place and is computed without regard to encumbrances on the property. (*Covina Union High School Dist.* v. *Jobe,* 174 Cal.App.2d 340, 353 [345 P.2d 78]; *Bullock's, Inc.* v. *Security-First Nat. Bk.,* 160 Cal. App.2d 277, 282 [325 P.2d 185]; *Valentin* v. *Valentin,* 93 Cal.App.2d 588, 592 [209 P.2d 654]; Black's Law Dictionary (4th ed. 1968).) Respondents cite as contrary to the general rule *Department of Social Welfare* v. *Wingo,* 77 Cal.App.2d 316 [175 P.2d 262]. That decision does contain language that under the then Old Age Security Law of California value of permissibly retained property "should be the amount of money that could be obtained for it." (77 Cal.App.2d at p. 326.) The language is used, however, as a test of valuation of promissory notes, the collectibility of which was questionable, and not in the context of valuation without regard to encumbrance.

 The use of various terms of value in the statutory scheme supports the conclusion that "market value" is used in section 11155 in its usual sense—the price property will bring in a sale by a willing seller to a willing buyer without regard to encumbrance. The phrase "market value" in that section is in contrast with the phrase "net appraised market value" appearing in section 11154, a term referrring to value after deduction of encumbrance. The Legislature, having used the term "net appraised market value" in section 11154 and being aware of it when section 11155 was enacted, must be presumed to have intended a different meaning when it used "market value" as the test in the latter section. That meaning is confirmed by the use of the terminology "combined assessed value . . . less all encumbrances" in section 11255. The intention of the Legislature to use "market value" in section 11155, in the traditional sense of compu-

tation without regard to encumbrances, is further indicated by language of a related statute, Welfare and Institutions Code section 14006. That statute, dealing with eligibility for medical assistance, states that the value of "other resources" computed in part with relation to section 11155 "shall [as to personal property other than insurance] be the conversion value." If section 11155 required that personal property be valued deducting encumbrances, that section itself would require valuation at "conversion value" so that a special valuation method for the purposes of medical aid applicable to property described in section 11155 would be unnecessary. Finally, while the statutory scheme deals in section 11158 with property deemed to have no value, fully encumbered property is not included within the definition.

In an effort to avoid the construction of the phrase "market value" as used in section 11155 which is compelled by the statutory scheme read as a whole, respondents rely upon a declaration of Senator Anthony C. Beilenson, author of the Welfare Reform Act of 1971 which amended section 11155 to its present form. Two considerations bar that tactic. First, the competency of such a declaration is very doubtful except as rebuttal to other published statements of the intent of an individual legislator. (*Rich v. State Board of Optometry,* 235 Cal.App.2d 591, 603 [45 Cal.Rptr. 512]; cf. *Ballard* v. *Anderson,* 4 Cal.3d 873, 881 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392].) Second, the declaration itself states that the problem of the treatment of encumbrances in the determination of market value did not occur to Senator Beilenson but that if it had he would have adopted respondents' view. To interpret legislation on the basis of an afterthought of the author of a bill in a manner contrary to all indications of the intent of other legislators who voted for it, is to permit the author, by the expedient of filing a declaration with a court, to accomplish a one-man amendment.

Respondents argue also that encumbered property, to the extent of the encumbrance, is not available for expenditure to meet a current or future need as required by section 11155. That argument ignores disjunctive language in the pertinent clause. The property must be available for use or expenditure. Here its availability for use for the purpose for which it was acquired is clear although the property is not available for expenditure.

### Conclusion

We thus conclude that the portion of EAS Manual section 42-207(d), which appellants have not conceded on this appeal to be contrary to law, is

valid in its method of valuation, disregarding encumbrances on personal property. We thus reverse the order granting a preliminary injunction. Because of appellants' concession that section 42-207(d) is invalid in part and the preliminary injunction is proper to that extent, we remand the matter to the superior court for further proceedings consistent with this opinion.

Wood, P. J., and Lillie, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied August 8, 1973. Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.