[No. 52181-6.   En Banc.   July 24, 1986.]

HI–STARR, INC., *Respondent,* v. THE LIQUOR
CONTROL BOARD, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *John G. Hennen, Assistant,* for appellant.

*Diamond & Sylvester,* by *John T. Petrie,* for respondent.

*Robert A. Seeber* on behalf of the Restaurant Association, amicus curiae for appellant.

CALLOW, J.—The Washington State Liquor Control Board appeals the trial court's judgment reinstating the class H liquor license of Hi–Starr, Inc., d/b/a Park Bench Restaurant. We reverse the trial court and affirm the revocation of Hi–Starr's class H liquor license.

The Board held a hearing to review Hi–Starr's eligibility to retain its class H liquor license. The administrative law judge revoked Hi–Starr's class H liquor license ruling that Hi–Starr had failed to demonstrate that the Park Bench Restaurant was being operated in conformance with the standards set forth in WAC 314–16–190(4). Further, it was shown that for two consecutive semiannual reports the restaurant did not maintain daily average gross food sales in amounts of 40 percent or more of its combined food and liquor sales in violation of WAC 314–16–190(5). The evidence was that Hi–Starr also failed to establish any unusual, extenuating or mitigating circumstances warrant-

ing an extension of its class H liquor license pursuant to WAC 314–16–190(7).

The trial court reversed the revocation of the class H liquor license holding: (a) the Board exceeded its authority in adopting WAC 314–16–190(4) and (5) because the adoption of these rules amounted to the improper assumption of legislative functions by the administrative body; (b) the legislative delegation of power to the Board to further define "restaurant" for the purposes of RCW 66.24.410(2) was unconstitutional; (c) the 40 percent requirement of WAC 314–16–190(4) and (5) is arbitrary and capricious; and (d) WAC 314–16–190(7) pertaining to unusual, extenuating and mitigating circumstances is void for vagueness.

The pertinent WAC 314–16–190 sections are as follows:

WAC 314–16–190 Class H restaurant—Qualifications. (1) All restaurant applicants for a Class H license, in addition to furnishing all requested material and information relating to the premises applied for and their personal qualifications, shall establish to the satisfaction of the board that the premises will commence as, and continue to operate as, a bona fide restaurant as required by RCW 66.24.400 and 66.24.410(2).

. . .

(4) To demonstrate to the satisfaction of the board that a Class H restaurant as defined in RCW 66.24.410(2) is maintained in a substantial manner as a place for preparing, cooking and serving of complete meals, a Class H restaurant shall maintain daily average gross food sales of one hundred dollars or more, and such food sales shall amount to forty percent or more of the restaurant's total food–liquor sales.

(5) Each Class H restaurant licensee shall submit semi–annual reports on forms provided by the board, showing its gross food and liquor sales. If for two successive semi–annual reports, a Class H restaurant's daily average gross food sales are less than one hundred dollars, or its food sales are less than forty percent of its total food–liquor sales, such restaurant shall be ineligible to retain its Class H license.

. . .

(7) In the event a Class H restaurant licensee shall fail to comply with any of the foregoing requirements, and

such licensee has been notified that they will not be eligible to retain its Class H license, such licensee may petition the board setting forth unusual, extenuating and mitigating circumstances for the failure to comply and the board may consider such reasons and may grant an extension of the Class H license under such terms and conditions as the board determines are in the best interest of the public.

The issues are:

I. Did the Board exceed its authority in adopting WAC 314–16–190(4) and (5) and is the delegation of this authority to the Board unconstitutional?

II. Is the 40 percent requirement of WAC 314–16–190(4) and (5) arbitrary and capricious?

III. Is WAC 314–16–190(7) void for vagueness?

I

THE DELEGATION OF AUTHORITY IS CONSTITUTIONAL

■ ■ Legislative functions cannot be delegated to an administrative body but the Legislature may delegate administrative power. *Keeting v. PUD 1,* 49 Wn.2d 761, 767, 306 P.2d 762 (1957); *see also* 1 C. Koch, *Administrative Law and Practice* § 1.22 (1985); R. Pierce, Jr., S. Shapiro & P. Verkuil, *Administrative Law and Process* § 3.4.5 (1985); B. Schwartz, *Administrative Law* § 2.12 (2d ed. 1984). Regarding the standards required for a proper delegation of administrative power, *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 159, 500 P.2d 540 (1972), *appeal dismissed,* 410 U.S. 977 (1973), states:

[T]he delegation of legislative power is justified and constitutional, and the requirements of the standards doctrine are satisfied, when it can be shown (1) that the legislature has provided standards or guidelines which define in general terms what is to be done and the instrumentality or administrative body which is to accomplish it; and (2) that *procedural safeguards exist to control arbitrary administrative action and any administrative abuse of discretionary power.*

The dominion of the Board is broad and extensive. *Quan v. State Liquor Control Bd.,* 69 Wn.2d 373, 379, 418 P.2d

424 (1966). The broad powers of the Board are, in part, enumerated under RCW 66.08.050. The Board has the authority to make necessary and advisable regulations consistent with the spirit of RCW Title 66. RCW 66.08.030(1); *see State ex rel. Thornbury v. Gregory*, 191 Wash. 70, 78, 70 P.2d 788 (1937). However, the broad and extensive powers given the Board are not all inclusive. Numerous statutory guidelines have been provided which broadly define the authority and duty of the Board and which insure procedural safeguards against arbitrary administrative action and abuse of discretionary power. *See* in particular RCW 66.08.010, .030, .050, .150; RCW 66.24.010, .400–.450; RCW 66.98.070; *see also* RCW 34.04. RCW 66.08.010 states:

> This entire title shall be deemed an exercise of the police power of the state, for the protection of the welfare, health, peace, morals, and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose.

The Legislature has provided the Board with standards or guidelines and has established required procedural safeguards to protect against improper administrative action. *See Barry*, at 159. The delegation of administrative power to the Board is justified and constitutional.

### THE BOARD ACTED WITHIN ITS AUTHORITY

An agency's rules must be encompassed within its statutory framework. *Anderson, Leech & Morse, Inc. v. State Liquor Control Bd.*, 89 Wn.2d 688, 694, 575 P.2d 221 (1978). Rules and regulations enacted by an agency are presumed valid and will be upheld if reasonably consistent with the statutes they implement. *Brannan v. Department of Labor & Indus.*, 104 Wn.2d 55, 60, 700 P.2d 1139 (1985). "[R]egulation[s] will not be struck down unless 'compelling reasons are presented sufficient to show the scheme is in conflict with the intent and purpose of the legislation.'" *Anderson*, at 695 (quoting *Weyerhaeuser Co. v. Department of Ecology*, 86 Wn.2d 310, 317, 545 P.2d 5 (1976)).

After the repeal of prohibition by the Twenty–First

Amendment the original authority for the selling of alcohol in the state of Washington came from the Steele Act passed in the 1933 Extraordinary Session. The Steele Act created the Liquor Control Board. *See* RCW 66.08.

The Steele Act granted the Board the power necessary to maintain strict monopoly control over the sale of alcoholic beverages. In the interest of public health, safety and morals, the Board "possesse[s] the constitutional and statutory power to control and regulate the dispensation of alcoholic beverages." *Quan,* at 379. *State ex rel. Shannon v. Sponburgh,* 66 Wn.2d 135, 401 P.2d 635 (1965); *"U" Dist. Bldg. Corp. v. O'Connell,* 63 Wn.2d 756, 388 P.2d 922 (1964); *Derby Club, Inc. v. Becket,* 41 Wn.2d 869, 252 P.2d 259 (1953); *Ajax v. Gregory,* 177 Wash. 465, 32 P.2d 560 (1934). The Steele Act did not allow restaurants to serve liquor by the drink. Laws of 1933, 1st Ex. Sess., ch. 62.

Washington State voters passed Initiative 171 on November 2, 1948, creating the class H "liquor by the drink" license. *Randles v. State Liquor Control Bd.,* 33 Wn.2d 688, 206 P.2d 1209, 9 A.L.R.2d 531 (1949) upheld the constitutionality of Initiative 171 stating at page 694:

> There is no natural or constitutional right to sell or engage in the business of selling or dispensing intoxicating liquor. The state, under its police power, may prohibit entirely the carrying on of such business and may regulate it in such a manner as may be deemed advisable. The times when, the places where, and the persons to whom it may be sold, may be determined by the state. The privilege of dispensing intoxicating liquor may be given to some and denied to others.

The rules of statutory construction apply to initiatives as well as to legislative enactments. *Department of Rev. v. Hoppe,* 82 Wn.2d 549, 552, 512 P.2d 1094 (1973). The collective intent of the people is to be ascertained when construing a law adopted by the vote of the people. *Hoppe,* at 552; E. Crawford, *The Construction of Statutes* § 365, at 745 (1940). To ascertain the collective purpose and intent of the people, material in the official voters' pamphlet may be considered. *Hoppe,* at 552; *Bayha v. PUD 1,* 2

Wn.2d 85, 98, 97 P.2d 614 (1939) ("arguments made in pamphlets for and against an initiative measure might be considered by the court in determining the purpose and intent of the act"). In the 1948 Voters Pamphlet, Initiative 171 contained the following ballot title:

> AN ACT providing for the regulation and control of the sale of intoxicating liquor by the drink; restricting licenses to restaurants, hotels, clubs, certain places on trains, boats and airplanes, and qualified tourist establishments; limiting such licenses to one for each fifteen hundred (1500) of population; prescribing license fees up to one thousand dollars ($1,000) per annum and surety bond of ten thousand dollars ($10,000) for payment of penalties; providing terms of office for liquor board members, with removal for cause only; distributing such license fees to the State College and University for medical and biological research; defining terms and repealing conflicting acts.

Initiative 171 did not intend to turn restaurants into drinking establishments, but to permit drinks to be served incidental to food service. The Board's responsibilities include insuring that restaurants are maintained as restaurants. Initiative 171 gave the Board the same authority to make rules with regard to class H licenses as the Board previously possessed with regard to other classes of licenses. Section 15 of the initiative (now codified as RCW 66.98-.070) contained a specific delegation of authority to the Board to make rules for the purpose of carrying into effect the provisions of Initiative 171. This granted the Board the same power to make regulations pertaining to the conduct of class H license holders as the Board had in relation to other license holders under RCW 66.08.030.

Initiative 171 did not provide for the class H licensing of all restaurants. *See* RCW 66.24.420(2)–(5). Further, RCW 66.24.400 reads:

> There shall be a retailer's license, to be known and designated as class H license, to sell spirituous liquor by the individual glass, beer, and wine, at retail, for consumption on the premises, including mixed drinks and cocktails compounded or mixed on the premises only:

. . . Such class H license may be issued only to bona fide restaurants, hotels and clubs, and to dining, club and buffet cars on passenger trains, and to dining places on passenger boats and airplanes, and to dining places at publicly owned civic centers with facilities for sports, entertainment, and conventions, and to such other establishments operated and maintained primarily for the benefit of tourists, vacationers and travelers as the board shall determine are qualified to have, and in the discretion of the board should have, a class H license under the provisions and limitations of this title.

"Restaurant" is defined by RCW 66.24.410(2) which reads:

"Restaurant" as used in RCW 66.24.400 to 66.24.450, inclusive, means an establishment provided with special space and accommodations where, in consideration of payment, food, without lodgings, is habitually furnished to the public, not including drug stores and soda fountains: *Provided, That such establishments shall be approved by the board and that the board shall be satisfied that such establishment is maintained in a substantial manner as a place for preparing, cooking and serving of complete meals.* The service of only fry orders or such food and victuals as sandwiches, hamburgers, or salads shall not be deemed in compliance with this definition.

(Italics ours.)

▮ Hi–Starr argues that the statutory omission of a food/liquor ratio in RCW 66.24.410(2) prohibits the Board from using such a standard because a fundamental rule of statutory construction is that the expression of one item mandates the rejection of matters omitted. *General Tel. Co. v. Utilities & Transp. Comm'n,* 104 Wn.2d 460, 470, 706 P.2d 625 (1985). We disagree. A food/liquor ratio is not prohibited by RCW 66.24.410(2). Administrative agencies necessarily adopt rules to fill in the interstices of statutes. Further, the authority of the Board to differentiate between food serving establishments that would and would not be eligible for class H licenses was noted in *Randles,* at 698, stating:

The appellants claim that initiative 171 discriminates in favor of the operator of a restaurant as that term is

defined and limited therein, in that the operator of what is referred to as a "short order" restaurant is not eligible to secure a class H license. Again bearing in mind the plenary power of the state over the dispensing of intoxicating liquor and its authority to make such classifications as it deems proper as to the places where such intoxicating liquors may be dispensed and consumed, we are of the opinion that the distinction made in the definition of the term "restaurant" is one the lawmakers might lawfully draw.

The decision to issue a class H liquor license is discretionary with the Board. *See* RCW 66.24.010(2) and .420. The Board cannot adopt rules which are contrary to statutory authority. We hold the provisions of WAC 314–16–190(4) and (5) come within the statutory authority granted to the Board. WAC 314–16–190(4) spells out the requirements for obtaining Board approval pursuant to RCW 66.24.410(2). WAC 314–16–190(4) and (5) implement, and do not change, the requirements of RCW 66.24.410(2).

*Van Ripper v. State Liquor Control Comm'n,* 228 Or. 581, 365 P.2d 109 (1961) upheld the use of a food/liquor ratio noting that the then Washington 50 percent food requirement was considered by the Commission prior to the adoption of the Oregon food/liquor ratio. The Oregon Supreme Court held that the Commission had extensive power to promulgate rules and regulations regarding the sale of alcoholic beverages in food establishments and that while the Commission could not act contrary to statute it could fill in gaps in legislation to accomplish statutory purposes.

Pursuant to RCW 66.24.410(2) the Board is charged with requiring that restaurants be "maintained in a substantial manner as a place for preparing, cooking and serving of complete meals." WAC 314–16–190(4) and (5) provide a means by which a class H license holder can satisfy the Board that it does meet the statutory definition of restaurant. These rules are reasonably consistent with and implement RCW 66.24.410(2). No compelling reasons were presented which show that WAC 314–16–190(4) and (5)

conflict with the intent and purpose of Initiative 171 and RCW 66.24.410(2). The requirements of *Brannan* and *Anderson* are met. The Legislature's grant of broad authority to the Board is not an impermissible delegation.

## II

## THE ADOPTION OF WAC 314–16–190(4) AND (5) WAS NOT ARBITRARY AND CAPRICIOUS

The Board has acted under a food/liquor ratio over the decades since the passage of Initiative 171. Legislative attempts that have been made to prohibit the use of a food/liquor ratio have been unsuccessful. On January 18, 1977 the Board officially adopted the food/liquor ratio by administrative ruling pursuant to RCW 34.04.025.

██ The trial court found the adoption of WAC 314–16–190(4) and (5) to be arbitrary and capricious. *State v. Rowe,* 93 Wn.2d 277, 284, 609 P.2d 1348 (1980) states:

> Arbitrary and capricious action has been defined as willful and unreasoning action, without consideration and in disregard of facts and circumstances. *DuPont–Fort Lewis School Dist. 7 v. Bruno,* 79 Wn.2d 736, 739, 489 P.2d 171 (1971). *See also McDonald v. Hogness,* 92 Wn.2d 431, 598 P.2d 707 (1979). Where there is room for two opinions, action is not arbitrary and capricious even though one may believe an erroneous conclusion has been reached. *DuPont–Fort Lewis School Dist. 7 v. Bruno, supra; Miller v. Tacoma,* 61 Wn.2d 374, 390, 378 P.2d 464 (1963).

The trial court improperly applied the arbitrary and capricious standard. The majority of those appearing at the hearing argued against adoption of the rule for various reasons: (1) to request that the food/liquor ratio be reduced to a 30/70 requirement; (2) to express concern as to the effect that short order food sales had in relation to the food/liquor ratio; (3) to request a 90– to 120–day delay for further study; (4) to assert that a food/liquor ratio was not flexible and does not take into account regional differences, seasonal demand or consider specific clientele conducive to a high percentage of liquor sales; and (5) to assert that an

arbitrary percentage might be unenforceable. Two witnesses briefly spoke in favor of the rule. Numerous letters were received for and against the rule. The general consensus was against the adoption of the rule, but it cannot be said there was no room for a contrary opinion. There is no indication that the Board engaged in willful and unreasoned action disregarding the relevant facts and circumstances. The adoption of WAC 314–16–190(4) and (5) was not arbitrary and capricious. The trial court could not substitute its judgment in the place of the Board's as to the wisdom of WAC 314–16–190(4) and (5). *See Brannan,* at 62.

## III
### WAC 314–16–190(7) Is Not Void for Vagueness

■ WAC 314–16–190(7) gives the Board the option of providing a licensee with additional time to satisfy the 40 percent requirement upon a showing of "unusual, extenuating and mitigating circumstances." The trial court found section (7) void for vagueness.

> "Vagueness" goes to the question of procedural due process, *i.e.,* whether a statute provides fair notice, measured by common practice and understanding, of that conduct which is prohibited and whether there are proper standards for adjudication.

*Blondheim v. State,* 84 Wn.2d 874, 878, 529 P.2d 1096 (1975). Impossible standards of specificity are not required. *Blondheim,* at 878. The void for vagueness test is not appropriate here since WAC 314–16–190(7) is not a "regulatory statute prohibiting certain types of conduct and imposing sanctions for violation of its standards". *Department of Natural Resources v. Thurston Cy.,* 92 Wn.2d 656, 667, 601 P.2d 494 (1979), *cert. denied,* 449 U.S. 830 (1980) rejects a void for vagueness claim as improperly asserted on the above grounds.

■ Further, we find the language of WAC 314–16–190(7) to be sufficiently clear to notify an affected party that "unusual, extenuating and mitigating circumstances"

may be pleaded regarding the 40 percent requirement. We decline to require such specificity that every "unusual, extenuating and mitigating circumstance" be enumerated. No rule can provide the perfect checklist for the eventualities of the future. Administrative boards are chosen because of their knowledge, experience and wisdom. It is not expected that they will be omniscient. WAC 314–16–190(7) which provides flexibility and fair notice is not void for vagueness.

We hold that the provisions of WAC 314–16–190 are valid. The trial court is reversed. The conclusions of law entered by the administrative law judge are approved, and the final order of the Washington State Liquor Control Board canceling the liquor license privileges of Hi–Starr, Inc., d/b/a the Park Bench Restaurant, is affirmed.

DOLLIVER, C.J., UTTER, BRACHTENBACH, PEARSON, GOOD-LOE, and DURHAM, JJ., and HAMILTON, J. Pro Tem., concur.
ANDERSEN, J., concurs in the result.

Reconsideration denied September 5, 1986.