[No. 55809–4.   En Banc.   July 6, 1989.]

DIVERSIFIED INVESTMENT PARTNERSHIP, *Respondent,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant.*

20

*Kenneth O. Eikenberry, Attorney General,* and *Brian D. Peyton, Assistant,* for appellant.

*Kargianis, Austin & Erickson,* by *Craig C. Beles,* for respondent.

*Stephen I. Pentz* and *Carol S. Gown* on behalf of Caritas Services, amici curiae for respondent.

DOLLIVER, J.—On July 17, 1984, plaintiff Diversified Investment Partnership (Diversified) entered into an initial agreement to purchase Pioneer Ridge Healthcare (Pioneer), a licensed nursing home in Ferndale, Washington. On August 8, 1984, a formal purchase agreement was signed which conditioned the transaction on plaintiff's receipt of a property reimbursement rate under the Medicaid program sufficient to fund the cost of the transaction.

The Medicaid program is a federal program administered by the State, under which the State of Washington and the federal government share the cost of nursing home care for Medicaid patients. Under this program, nursing home providers receive cost reimbursement payments determined on a prospective basis under approval of the federal Department of Health and Human Services (HHS). The reimbursement rate is broken down into five cost centers: administration and operations, nursing services, food, return on investment, and property. The valuation of the property reimbursement rate is at issue in this case.

The defendant, Department of Social and Health Services (DSHS), is the state agency charged with the administration of the Nursing Homes Auditing and Cost Reimbursement Act of 1980, RCW 74.46. Laws of 1980, ch. 177. Under the act, DSHS reimburses nursing home providers for the use of property used for Medicaid recipients. The property reimbursement rate is calculated based upon the straight line depreciation of the asset. Generally, the depreciation base is the historical cost of the asset. However, RCW 74.46.360(4)(b) and WAC 388–96–559(7) provided for two exceptions allowing a stepped–up depreciation base, determined by the acquisition cost of the buyer, for changes of ownership for the first sale after January 1, 1980, and for sales every 10 years thereafter. Laws of 1980, ch. 177, § 36, p. 581. Plaintiff needed to obtain a stepped–up depreciation base in order to fund the cost of the purchase of Pioneer.

On July 18, 1984, the Deficit Reduction Act of 1984 (DEFRA) was enacted. Deficit Reduction Act of 1984, Pub.

L. No. 98–369, 98 Stat. 494 (1984). This act required state Medicaid programs to provide satisfactory assurances to the Secretary of HHS that the methods used to establish state property reimbursement rates would not result in higher rates than those resulting from application of the Medicare requirements. 42 U.S.C. 1396a(a)(13)(B), (C). In turn, DEFRA also changed the Medicare requirements. DEFRA restricted the revaluation of assets after a change in ownership under Medicare to the lesser of the acquisition price of the owner of record as of July 18, 1984, or the acquisition price of the buyer, with depreciation recaptured from the seller. 42 U.S.C. 1395x(v)(1)(O)(i), (ii).

DEFRA had the potential to affect the state property reimbursement rate due to RCW 74.46.840 which provided that any provision of the state act found to be in conflict with federal law such that federal funding was jeopardized would be inoperative to the extent of the conflict. RCW 74.46.840 also provided for the Secretary of DSHS to promulgate interim rules to be submitted to the next session of the Legislature.

Plaintiff learned of the passage of DEFRA within 10 days after its enactment. After this time, plaintiff was in contact with DSHS as to the possible adverse effect of DEFRA on the ability of plaintiff to receive the needed stepped–up depreciation base. While no official determination had yet been made as to whether the state statute conflicted with DEFRA, plaintiff, relying solely on a rate quoted orally by a DSHS representative, waived the contingency and closed the transaction about September 27, 1984. On October 5, 1984, DSHS sent Diversified a written confirmation of the quoted rate, but stated that the rate was conditional because of the uncertainty as to the application of DEFRA.

Pursuant to DEFRA, the State attempted to provide the necessary assurances to HHS that the State method for establishing Medicaid property reimbursement would not result in higher reimbursement than would result from application of the Medicare requirements. However, the State was unable to make adequate assurances, and on

June 4, 1985, HHS notified DSHS in writing that a non-compliance action was to be initiated.

Because the conflict with federal law threatened the loss of federal funding, RCW 74.46.840 came into operation to render inoperative the two exceptions contained in RCW 74.46.360(4)(b). Then, pursuant to RCW 74.46.840, the Secretary of DSHS promulgated an interim rule amending the existing regulation to reflect the Secretary's decision to eliminate the two exceptions from the statute. *See* WAC 388–96–559(7), as amended by State Register 85–14–018 (1985) (emergency rule) and State Register 85–17–052 (1985) (permanent rule). The Secretary submitted rule changes to the Legislature recommending that the two exceptions be eliminated to conform with DEFRA. The Legislature amended RCW 74.46.360 accordingly. Laws of 1986, ch. 175.

Plaintiff brought suit for declaratory relief in the Thurston County Superior Court claiming DSHS was equitably estopped from enforcing WAC 388–96–559(7), as amended, against plaintiff in setting the property reimbursement rate for Pioneer. At trial the equitable estoppel claim was dismissed with prejudice.

During the trial, testimony was allowed as to the validity of WAC 388–96–559(7) as amended; argument was heard on this issue after trial. The trial court held the amended regulation to be invalid as it was promulgated under authority of RCW 74.46.840, which constituted an unconstitutional delegation of legislative authority to the federal government. Defendant DSHS appealed to Division Two of the Court of Appeals. Plaintiff did not appeal the dismissal of the equitable estoppel claim. The Court of Appeals certified the case to this court pursuant to RCW 2.06.030. We reverse.

■ A statute is presumed constitutional and the party challenging it has the burden to prove it is unconstitutional beyond a reasonable doubt. *State v. Brayman,* 110 Wn.2d 183, 193, 751 P.2d 294 (1988).

Const. art. 2, § 1 (amend. 72) provides:

The legislative authority of the state of Washington shall be vested in the legislature, consisting of a senate and house of representatives, which shall be called the legislature of the state of Washington . . .

Plaintiff contends RCW 74.46.840 violates this constitutional provision because it delegates legislative authority to agencies of the federal government. RCW 74.46.840 provides:

If any part of this chapter and RCW 18.51.145 and 74.09.120 is found by an agency of the federal government to be in conflict with federal requirements which are a prescribed condition to the receipts of federal funds to the state, the conflicting part of this chapter and RCW 18.51.145 and 74.09.120 is hereby declared inoperative solely to the extent of the conflict and with respect to the agencies directly affected, and such finding or determination shall not affect the operation of the remainder of this chapter and RCW 18.51.145 and 74.09.120 in its application to the agencies concerned. In the event that any portion of this chapter and RCW 18.51.145 and 74.09.120 is found to be in conflict with federal requirements which are a prescribed condition to the receipt of federal funds, the secretary, to the extent that the secretary finds it to be consistent with the general policies and intent of chapters 18.51, 74.09, and 74.46 RCW, may adopt such rules as to resolve a specific conflict and which do meet minimum federal requirements. In addition, the secretary shall submit to the next regular session of the legislature a summary of the specific rule changes made and recommendations for statutory resolution of the conflict.

The Legislature is prohibited from delegating its purely legislative functions. *See Hi–Starr, Inc. v. Liquor Control Bd.,* 106 Wn.2d 455, 458, 722 P.2d 808 (1986); *State ex rel. Namer Inv. Corp. v. Williams,* 73 Wn.2d 1, 8–9, 435 P.2d 975 (1968). These nondelegable powers include the power to enact, suspend, and repeal laws, and the power to declare general public policy. *See generally* 16 Am. Jur. 2d *Constitutional Law* § 338 (1979). A statute must be complete in itself when it leaves the hands of the Legislature. *State ex rel. Hunt v. Tausick,* 64 Wash. 69, 79, 116 P. 651 (1911); *see also* 16 Am. Jur. 2d *Constitutional Law* § 358 (1979). It

is well settled in Washington that the Legislature may not constitutionally attempt to adopt future federal law by statute. *See Woodson v. State,* 95 Wn.2d 257, 623 P.2d 683 (1980); *State v. Jordan,* 91 Wn.2d 386, 588 P.2d 1155 (1979); *State v. Dougall,* 89 Wn.2d 118, 570 P.2d 135 (1977); *Nostrand v. Balmer,* 53 Wn.2d 460, 335 P.2d 10, *vacated and remanded,* 362 U.S. 474 (1959); *State ex rel. Kirschner v. Urquhart,* 50 Wn.2d 131, 310 P.2d 261 (1957). If it were to do so, the substance of the law would be incomplete when it passed the Legislature, thus transferring the power to render judgment on an issue to the federal government.

The trial court concluded and we concur that RCW 74.46.840 does not attempt to adopt future federal rules, regulations or statutes. RCW 74.46.840 provides only that conflicting portions of the state statute are inoperative pending further review by the Legislature; no federal rule or statute is automatically adopted thereby.

Although purely legislative powers are nondelegable, the Legislature may delegate administrative power to fill in the interstices of the law if the Legislature defines generally what is to be done, which administrative body is to accomplish the specified purposes, and what procedural safeguards are in effect to control arbitrary administrative action. *See Hi–Starr, Inc.,* at 458 (citing *Barry & Barry, Inc. v. Department of Motor Vehicles,* 81 Wn.2d 155, 159, 500 P.2d 540 (1972), *appeal dismissed,* 410 U.S. 977 (1973)). The Legislature may also delegate to administrative officers or boards the power to determine some fact or state of things upon which the application of the law is made to depend provided the law enunciates standards by which those officers or boards will be guided. *See Washington Water Power Co. v. State Human Rights Comm'n,* 91 Wn.2d 62, 586 P.2d 1149 (1978). Thus, constitutionally permissible delegations of administrative power concerning the application of the law may take the form of interstitial administrative action or contingent legislation. *See L.*

Tribe, *American Constitutional Law* § 5–17, at 362 (2d ed. 1988).

Aside from the application of the law, however, there is a separate question as to when a law, substantively complete in itself, will take effect and when it will become inoperative. Generally, a law takes effect upon being enacted and is no longer in effect when it is repealed. The question here is whether the Legislature may condition the operative effect of a law, complete in itself, upon the happening of a legislatively specified event in the future, which event is beyond the control of the Legislature. The trial court concluded that such a condition was unconstitutional because it "defer[red] to future actions of a non–state agency over which it [the Legislature] has no control . . ."

■■ Although we have not had occasion to address this issue in recent times, the early case of *State v. Storey*, 51 Wash. 630, 99 P. 878 (1909) is applicable. In *Storey*, the Legislature passed a law prohibiting livestock from running at large in counties where three–fourths of the land was fenced. *Storey*, at 631. It was the duty of the county commissioners to determine if three–fourths of the land was fenced. *Storey*, at 631. This would be an example of a valid contingent delegation to the commissioners to ascertain a fact upon which the application of the law depended, provided the Legislature articulated standards for making this determination. However, the statute went on to state that it would not take effect until 10 or more freeholders in a county brought a petition for the enforcement of the act. *Storey*, at 631. The argument that, because the act came into effect upon the discretionary act of the freeholders, it unconstitutionally delegated legislative power to private persons was rejected by the court. *Storey*, at 631. The court stated:

> If we concede, for this case, that the county commissioners have no power to determine the facts or make the act effective without this petition, we still think it does not follow that there is any delegation of legislative power. The act was passed by the legislature. That authority may say definitely when an act

shall take effect; or it may fix an indefinite time in the future upon the happening of some event before the act shall take effect. Cooley, Const. Lim. (7th ed.), p. 169. The mere fact that the act does not take effect until the contingency arises, does not indicate a delegation of legislative power, even where the contingency depends upon the action of certain persons.

*Storey,* at 631–32. The cited treatise elaborates upon why this type of conditional legislation is not a delegation of legislative power.

"The event or change of circumstances on which a law may be made to take effect must be such as, in the judgment of the legislature, affects the question of the expediency of the law; an event on which the expediency of the law in the opinion of the law–makers depends. On this question of expediency the legislature must exercise its own judgment definitely and finally. When a law is made to take effect upon the happening of such an event, the legislature in effect declare the law inexpedient if the event should not happen, but expedient if it should happen. They appeal to no other [persons] to judge for them in relation to its present or future expediency. They exercise that power themselves, and then perform the duty which the Constitution imposes upon them."

T. Cooley, *Constitutional Limitations* 169 (7th ed. 1903) (quoting *Barto v. Himrod,* 8 N.Y. 483, 490 (1853)).

The reasoning of *Storey* was cited with approval in *Royer v. PUD 1,* 186 Wash. 142, 145–46, 56 P.2d 1302 (1936). In *Royer,* the statute provided for the Board of County Commissioners to call for a general election for the purpose of creating public utility districts, coextensive with the boundaries of each county, upon a petition signed by 10 percent of the electors of that county. *Royer,* at 143–45. Although the constitutionality of the statute was not specifically challenged under Const. art. 2, § 1, the court, relying on *Storey,* did state that when a statute "leaves it to a local agency to determine when the law shall go into effect, there is no delegation of legislative power . . ." *Royer,* at 145. While both *Royer* and *Storey* dealt with matters of local concern, neither case relied upon the Legislature's power to vest municipal corporations with certain powers regarding matters of local concern. *See Earle M. Jorgensen*

*Co. v. Seattle,* 99 Wn.2d 861, 869, 665 P.2d 1328, *cert. denied,* 464 U.S. 982 (1983). Rather, both cases, either directly or implicitly, acknowledged the application of the unlawful delegation doctrine, but concluded that the conditional legislation involved in each case was not a delegation of legislative power.

Conditioning the operative effect of a statute upon the happening of a future specified event can be distinguished from a statute which attempts to adopt future federal law. When a statute attempts to adopt future federal law, the Legislature transfers the power to render judgment on an issue to a federal legislative or administrative body. For example, in *State v. Dougall,* 89 Wn.2d 118, 570 P.2d 135 (1977), the Legislature permitted future federal designation of drugs to be determinative of those drugs which would be proscribed by state law. The power of the State Legislature to determine which particular drugs would be controlled substances under the state statute was transferred to the federal government. The State Legislature's only judgment as to that statute was that it would defer to the judgment of the federal government. Such a transfer of the legislative power to render judgment is unconstitutional. *See Dougall,* at 123.

To the contrary, however, conditioning the operative effect of a statute upon a future event specified by the Legislature does not transfer the state legislative power to render judgment to the persons or entity capable of bringing about that event. The Legislature, itself, determines the statute would be expedient only in certain circumstances. The power to make this judgment is not transferred merely because the circumstances may arise at the discretion of others. The substance of the act is complete in itself and the Legislature is the body which rendered the judgment as to the expediency of conditioning the operation of the statute upon the specified event.

Just as the legislative power to render judgment is not transferred when the operative effect of a statute is conditioned upon a future specified event, legislative power is

not transferred when the continued operation of a statute is conditioned upon a future event. In the latter case, the Legislature has judged that a statute will no longer be expedient when a certain circumstance arises. We approved of this type of conditional legislation in *Morgan v. Department of Social Sec.,* 14 Wn.2d 156, 127 P.2d 686 (1942), a case similar to the one at issue.

In *Morgan,* three recipients of senior citizen grants were dissatisfied with the amounts of their grants. They contended they were entitled to grants fixed in accordance with the state statute which exempted a recipient's home from the definition of "income" and "resources" for the purposes of determining the amount of their grants. The state statute contained a provision which provided:

> If any portion, section or clause of this act shall for any reason be declared . . . not in accordance with the provisions of the Federal Social Security Act, such adjudication shall not affect the remainder of the act.

Laws of 1941, ch. 1, § 21, p. 12. After the state statute was passed, provisions in the federal Social Security Act were enacted which required recipients' homes be included within "income" and "resources" in fixing the amount of grants by the state agency. 42 U.S.C. § 301 *et seq.* The federal act made matching funds available to those states which submitted state plans for old age assistance which were approved by the Social Security Board.

The federal Board determined that provisions of the state statute exempting recipients' homes from "income" and "resources" violated the federal act. *Morgan,* at 167. There was no question that a determination of conflict was to be made by the federal Board. *Morgan,* at 172–73. The court upheld the state Department's action in "disregarding certain provisions of the act, so as to bring the act in harmony with the Federal statute." *Morgan,* at 176. The statute conditioned the continued operation of the statute upon a finding of conflict by a federal agency. The *Morgan* decision provided the basis for similar decisions in three other cases involving conflicts between the state old age

assistance statute and the federal Social Security Act. *Cerenzia v. Department of Social Sec.,* 18 Wn.2d 230, 138 P.2d 868 (1943); *Burgdorf v. Department of Social Sec.,* 14 Wn.2d 209, 127 P.2d 709 (1942); *Halsell v. Department of Social Sec.,* 14 Wn.2d 709, 127 P.2d 711 (1942).

Conditioning the continued operation of a statute upon the happening of a future specified event can be distinguished from delegating the power to repeal a statute. When the Legislature attempts to delegate the power to repeal a statute, the Legislature necessarily transfers its power to render judgment as to the continued expediency of the statute. However, when the Legislature conditions the continued operation of a statute upon the happening of a future event, the Legislature retains and exercises the power to render judgment as to the continued expediency of the statute; it does not transfer this power to those capable of bringing about the event.

In this case, the Legislature made the judgment that the continuation of federal funding was more important than the possible interim interruption caused by the inoperativeness of conflicting portions of the state statute. No federal agency was given the power to render judgment as to the continued expediency of the statute simply because the agencies had the ability to bring about the event specified by the Legislature. "Whether to accept or reject federal funds under federal–aid programs is a matter of legislative choice." *Yelle v. Bishop,* 55 Wn.2d 286, 303, 347 P.2d 1081 (1959). RCW 74.46.840 is an expression of such a legislative choice, not an abdication of its legislative power.

Other states have agreed that this type of conditional legislation is not a delegation of legislative power. *See State v. Baldwin,* 140 Vt. 501, 510, 438 A.2d 1135 (1981) (contingent upon future state legislative enactments); *State ex rel. Douglas v. Sporhase,* 208 Neb. 703, 710–11, 305 N.W.2d 614 (1981) (contingent upon reciprocal statutory provision in sister state); *Opinion of the Justices,* 344 So. 2d 1196 (Ala. 1977) (contingent upon federal appropriations); *State*

*v. Padley,* 195 Neb. 358, 360, 237 N.W.2d 883 (1976) (contingent upon presidential termination of federal conservation act); *Opinion of the Justices,* 287 Ala. 326, 328–30, 251 So. 2d 744 (1971) (contingent upon future adoption of constitutional amendment); *Lennox v. Housing Auth.,* 137 Neb. 582, 590–91, 290 N.W 451, 291 N.W. 100 (1940) (contingent upon a determination by the governing body of any city).

Because we find conditional legislation of this type does not transfer legislative power to render judgment, plaintiff has not met its burden to prove beyond a reasonable doubt that RCW 74.46.840 unconstitutionally delegates legislative power to the federal government. To the extent plaintiff argues RCW 74.46.840 violates Const. art. 2, § 1 (amend. 72) in other respects and violates Const. art. 2, § 37, we find such arguments without merit. We also find no merit in the argument that the amendment to WAC 388–96–559(7) exceeds the statutory grant of authority contained in RCW 74.46.840.

The ruling of the Thurston County Superior Court that RCW 74.46.840 violates Const. art. 2, § 1 (amend. 72) as an improper delegation of legislative power to the federal government is reversed.

CALLOW, C.J., and UTTER, BRACHTENBACH, DORE, PEARSON, ANDERSEN, DURHAM, and SMITH, JJ., concur.