# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| ASSOCIATED GENERAL CONTRACTORS OF WASHINGTON, a Washington Non-Profit Corporation; ASSOCIATED BUILDERS AND CONTRACTORS OF WESTERN WASHINGTON, INC., a Washington Non-Profit Corporation; INLAND PACIFIC CHAPTER OF ASSOCIATE BUILDERS AND CONTRACTORS, INC., a Washington Non-Profit Corporation; and INLAND NORTHWEST AGC, INC., a Washington Non-Profit Corporation, | No. 54465-2-II |
| Appellants, | |
| v. | |
| STATE OF WASHINGTON; JAY INSLEE, Governor; JOEL SACKS, Director of Washington State Dep't of Labor and Industries; and JIM CHRISTENSEN, Washington State Dep't of Labor and Industries Program Manager and Industrial Statistician, Prevailing Wage Program; in their official capacities, | PUBLISHED OPINION |
| Respondents. | |

SUTTON, J. — The legislature amended the prevailing wage law and enacted Substitute

Senate Bill 5493, which altered the method for how the industrial statistician for the Department

of Labor and Industries (L&I) sets the prevailing wages for employees on public works projects.

Previously, the industrial statistician conducted wage surveys to determine the prevailing wage for

each trade on a county-by-county basis to determine whether the majority or average wage rate

would prevail in that locality. Under Substitute Senate Bill 5493 (SSB 5493),[1] the industrial statistician shall adopt the prevailing wage rate for a geographic jurisdiction solely based on collective bargaining agreements (CBAs) for those trades and occupations that have CBAs, and if there is more than one CBA for that locality, the higher wage rate will prevail.

Associated General Contractors of Washington, Associated Builders and Contractors of Western Washington, Inc., Inland Pacific Chapter of Associate Builders and Contractors, Inc., and Inland Northwest AGC, Inc. (collectively AGC) sued the State of Washington, Washington State Governor Jay Inslee, Director of L&I Joel Sacks, and Industrial Statistician Jim Christensen (collectively the State) over the new law. The State filed a motion for summary judgment, which the superior court granted.

AGC appeals the superior court's order granting summary judgment to the State. AGC argues that SSB 5493, codified as RCW 39.12.015(3),[2] violates the non-delegation doctrine.[3,4]

---

[1] SUBSTITUTE SENATE BILL 5493, 65th Leg., Reg. Sess. (Wash. 2018).

[2] In 2019, the legislature again amended RCW 39.12.015. Laws of 2019, ch. 29, § 2. The parties refer to the numbering of the current statute. We also refer to the numbering of the current statute.

[3] AGC also argues that RCW 39.12.015(3)(a) violates due process and equal protection. RAP 10.3(a)(6) requires an argument "together with citations to legal authority and references to relevant parts of the record." AGC does not address the *Mathews v. Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) factors or otherwise address the rules we use to analyze whether a statute violates procedural due process. And AGC presents no argument regarding the different classes for analyzing an equal protection claim or the standard of review for an equal protection claim. Accordingly, we decline to address these issues. *See* RAP 10.3(a)(6).

[4] AGC further argues that RCW 39.12.015(3)(a) violates article II, section 37 of the Washington State Constitution. Because we hold that RCW 39.12.015(3)(a) violates the non-delegation doctrine, we decline to decide this issue.

No. 54465-2-II

We agree and hold that the statute is unconstitutional because it violates the non-delegation doctrine. Accordingly, we reverse the superior court's order granting the State summary judgment and remand for further proceedings consistent with this opinion.

FACTS

I. Background

A. AGC

AGC represents contractors and subcontractors who perform public works projects in Washington State. AGC provides support to those in the construction industry. AGC frequently negotiates CBAs with trade unions on behalf of contractors and subcontractors.

B. Method to Set the Prevailing Wage

Washington's "Prevailing Wage Act," requires that the industrial statistician of L&I determine the prevailing wage rate. RCW 39.12.015(1). Employers must pay the "prevailing wage" to all employees performing work on public works projects in Washington. RCW 39.12.010-.020. The "prevailing rate of wage" is defined as "the rate of hourly wage, usual benefits, and overtime paid in the locality . . . to the majority of workers . . . in the same trade or occupation." RCW 39.12.010(1). The "locality is the largest city in the county wherein the physical work is being performed." RCW 39.12.010(2). The "prevailing wage" is determined on a county-by-county basis and is based on the largest city in the county. RCW 39.12.010(1)-(2); RCW 39.12.026.

Twice a year, the industrial statistician of L&I sets the prevailing wages used to determine the wages for employees on public works projects. RCW 39.12.015(1); WAC 296-127-011(1).

3

The industrial statistician may not use wage data from one county to determine a prevailing wage in a different county. RCW 39.12.026(1).

Prior to SSB 5493, the industrial statistician determined the prevailing wages by collecting prevailing wage surveys and submittal of data per the governing statues and regulations. WAC 296-127-019. Every non-union and union contractor received a survey requesting information about wages paid, benefits, and hours worked by occupation. The industrial statistician would review the data and use it to make a determination of the majority or average rate. Oftentimes, private parties reported paying the CBA laborer wage rate for the majority of hours worked. If the majority of workers in a locality were paid the same wage rate, that rate would become the prevailing wage for the occupation in that particular county. WAC 296-127-019(6)(a). If no single wage rate was paid to a majority of workers for that occupation in that locality, the industrial statistician would determine an average rate, which would become the prevailing wage for that occupation in that county. WAC 296-127-019(6)(b).

## II. AMENDMENTS TO RCW 39.12.015

In 2018, the Washington State Legislature amended RCW 39.12.015 by enacting SSB 5493. It added two clauses to the statute:

> (2) Notwithstanding RCW 39.12.010(1), the industrial statistician *shall establish* the prevailing rate of wage *by adopting* the hourly wage, usual benefits, and overtime paid for the geographic jurisdiction established in collective bargaining agreements for those trades and occupations that have collective bargaining agreements. For trades and occupations with more than one collective bargaining agreement in the county, the higher rate will prevail.

> (3) For trades and occupations in which there are no collective bargaining agreements in the county, the industrial statistician *shall establish* the prevailing rate of wage *as defined in RCW 39.12.010* by conducting wage and hour surveys. In instances when there are no applicable collective bargaining agreements and

4

conducting wage and hour surveys is not feasible, the industrial statistician may
employ other appropriate methods to establish the prevailing rate of wage.

Laws of 2018, ch. 248, § 1 (emphasis added) (codified as RCW 39.12.015(3)(a)-(b)).[5]

The legislature made these amendments to save money and to make the process of establishing prevailing wages more efficient. S.B. REP. ON SUBSTITUTE S.B. 5493, at 2, 65th Leg., Reg. Sess. (Wash. 2018). "This is a matter of cost efficiencies. Setting a rate to the CBA rate does not mean it will be done by union workings. It imbeds the true cost of the work. . . . A [Department of Transportation] study says using CBAs is the most accurate way to determine wages." S.B. REP. ON SUBSTITUTE S.B. 5493, at 2.

SSB 5493 made no other amendments to the chapter. Therefore, RCW 39.12.010, which defined "prevailing wage," remained the same, as did RCW 39.12.026, which restricted the use of wage data to the county in which the data originated. The amendment altered the method by which the industrial statistician determines the prevailing wage rate. There is no requirement for the CBA to cover a minimum number of employers, employees, or hours worked. There is no requirement for the relevant, signatory employers to have any employees working in the occupation nor in the county whose prevailing wage is being determined so long as the CBA exists with the highest rate. A CBA can set the prevailing wage rate in counties even where the employer has no employees who work there or where the union has no members who work in that county.

---

[5] In its 2019 amendments, the legislature amended RCW 39.12.015(3)(a) to incorporate by reference newly enacted RCW 39.12.017. Laws of 2019, ch. 29, § 2. This does not affect our analysis of the 2018 amendments.

III.  SUMMARY JUDGMENT

A.  PRELIMINARY INJUNCTION

AGC filed this lawsuit against the State, arguing that the 2018 amendments to RCW 39.12.015 rendered the statute invalid and thus, unconstitutional, and sought a preliminary injunction.  The superior court denied AGC's motion for a preliminary injunction.  Both parties then filed cross motions for summary judgment.

B.  EVIDENCE PRESENTED AT SUMMARY JUDGMENT

To support its motion, AGC filed the deposition testimony of the industrial statistician at the relevant time.  The industrial statistician conceded that at the time SSB 5493 was enacted, CBAs not in existence would be used to set prevailing wage rates under the new law.  He also acknowledged that the union rate will be the prevailing wage rate if there is a CBA.  He later attempted to change his answer to adding the phrase "bona fide" CBA.  Clerk's Papers (CP) at 2610.  The industrial statistician also said he did not know whether the CBAs used to determine the prevailing wages were valid, but that he assumed they were.  The industrial statistician admitted that he has used expired CBAs to set the prevailing wage rates.

The industrial statistician acknowledged that an unsigned CBA would not be valid, but the industrial statistician did not and does not verify whether a CBA is signed by a union or employer representative before using it to set prevailing wage rates.  A representative for AGC admitted that CBAs are frequently downloaded from public websites without verifying whether they are valid.

Further, under SSB 5493, the industrial statistician may use pre-hire CBA agreements, which are agreements made before any employees are hired and before the union is even recognized by the National Labor Relations Board, to set prevailing wages.  Because the industrial

statistician "shall establish" the prevailing wage "by adopting" the rate from CBAs, the industrial statistician may have to use a rate in a CBA from a pre-hire agreement when work has never been performed based on that agreement. RCW 39.12.015(3)(a). And some CBAs cover multiple geographic locations across different counties, so the industrial statistician may have to establish a prevailing wage based on work done in another county in which the prevailing wage is being set under a CBA. RCW 39.12.015.

Before the enactment of SSB 5493, the industrial statistician would consider CBAs in setting the prevailing wage rates, but would ultimately make the determinations. Now, the industrial statistician "shall establish" the prevailing wage "by adopting" the rate from CBAs, thus giving the industrial statistician no discretion. RCW 39.12.015(3)(a). Additionally unlike what the industrial statistician did before to determine the prevailing wage rate, the industrial statistician no longer conducts wage surveys if there is a CBA covering that occupation in that county.

Under SSB 5493, the highest wage rate prevails for an occupation in any given county, even if that particular wage rate only covers 100 feet of a total county. For example, a local agreement made by Seattle operators reaches part of Grant County. Prior to SSB 5493, the Seattle rates never prevailed in Grant County because the vast majority of the work was covered under a different CBA with much lower rates. Now, Seattle rates will prevail in Grant County as the prevailing wage rate because the Seattle rates are higher. Similarly, if a CBA only covers one percent of the hours worked in a given county but has the highest wage rate for the occupation in that county, the industrial statistician will have to adopt that rate.

IV. IMPACT OF AMENDMENTS TO RCW 39.12.015

In 2018, after SSB 5493 was signed into law and codified as RCW 39.12.015, AGC began negotiations with an operators union for a master labor agreement, which would cover almost all operating engineers working in 16 counties in the state. After two unsuccessful ratification votes, the International Union of Operating Engineers, Local 302, called a strike against the employers. After one week of the strike, Local 302 approached small employers and attempted to negotiate a side agreement. Some of these employers are also card-carrying members of Local 302. Shortly thereafter, some of these employers signed agreements to end the strike in exchange for paying a higher wage rate than what AGC had offered. A few weeks later, AGC ratified a new agreement with Local 302 that included lower wage rates than the side agreements. Because the wage rates in the side agreements were higher, those wage rates became the prevailing wage in 16 counties even though those wage rates represented a minority of the hours worked. The industrial statistician never confirmed whether there was a signatory employer doing work in each of the 16 counties or whether the small employers actually employed any operators in any of those counties.

Prior to ruling, the superior court requested a 50-state survey of case law about prevailing wage laws and similar constitutional challenges, which survey identified 15 relevant cases. After hearing arguments, the superior court entered summary judgment for the State and denied summary judgment to AGC.

AGC appeals.

ANALYSIS

AGC argues that the amendments to RCW 39.12.015 violate the non-delegation doctrine. We agree.

8

## I. LEGAL PRINCIPLES

### A. SUMMARY JUDGMENT

We review summary judgment decisions de novo. *Strauss v. Premera Blue Cross*, 194 Wn.2d 296, 300, 449 P.3d 640 (2019). Summary judgment is appropriate where the pleadings, admissions on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. CR 56(c). We consider the evidence and all reasonable inferences in favor of the nonmoving party. *Strauss*, 194 Wn.2d at 300.

### B. CONSTITUTIONAL INVALIDITY

We presume that a statute is constitutional. *Island County v. State*, 135 Wn.2d 141, 146, 955 P.2d 377 (1998). "A party challenging the statute's unconstitutionality bears the heavy burden of establishing its unconstitutionality beyond a reasonable doubt." *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 205, 11 P.3d 762 (2000). "This standard is met if argument and research show that there is no reasonable doubt that the statute violates the constitution." *Amalgamated*, 142 Wn.2d at 205.

## II. NON-DELEGATION DOCTRINE

### A. LEGAL PRINCIPLES

"The Washington Constitution vests legislative authority in the state legislature." *State v. Batson*, 196 Wn.2d 670, 674, 478 P.3d 75 (2020); WASH. CONST. art. II, § 1. "'[I]t is unconstitutional for the [l]egislature to abdicate or transfer its legislative function to others.'" *Batson*, 196 Wn.2d at 674 (quoting *Brower v. State*, 137 Wn.2d 44, 54, 969 P.2d 42 (1998)). "The Legislature may . . . delegate to administrative officers or boards the power to determine some fact

or state of things upon which the application of the law is made to depend provided the law enunciates standards by which those officers or boards will be guided." *Diversified Inv. P'ship v. Dep't of Soc. & Health Servs.*, 113 Wn.2d 19, 25, 775 P.2d 947 (1989).

Delegation by the legislature is proper if two elements are met: "[f]irst, the legislature must provide standards or guidelines which indicate in general terms what is to be done and the administrative body which is to do it." *Barry & Barry, Inc. v. Dep't of Motor Vehicles*, 81 Wn.2d 155, 163, 500 P.2d 540 (1972). "Second, adequate procedural safeguards must be provided, in regard to the procedure for promulgation of the rules and for testing the constitutionality of the rules after promulgation." *Barry & Barry*, 81 Wn.2d at 164.

B. ANALYSIS

1. Standards or Guidelines

AGC argues that SSB 5493 violates the non-delegation doctrine because it mandates the use of schedule wage rate lists in CBAs after its enactment to establish prevailing wages. AGC supports this argument by pointing out the industrial statistician stated that under SSB 5493, he will be adopting future wage rates from CBAs created by private parties that did not exist at the time SSB 5493 was enacted. We agree that SSB 5493 is an unconstitutional delegation of legislative authority based on future facts listed in CBAs to determine the prevailing wage rate.

The legislature may grant regulatory authority to private parties only if proposed standard, guidelines, and procedural safeguards exist. *United Chiropractors of Wash., Inc. v. State*, 90 Wn.2d 1, 4-8, 578 P.2d 38 (1978). In *State ex rel. Kirschner v. Urquhart*, 50 Wn.2d 131, 132, 135-36, 310 P.2d 261 (1957), our Supreme Court held that a statute that set standards for school accreditation to the Association of American Medical Colleges three years before the list of

accredited schools was made was unconstitutional. The court held that "[i]t would have been proper for the legislature to have enacted that accredited schools were only those on a list then in being, whether prescribed by the American Medical Association, or some other learned society; but it was not within permissible constitutional limits to define accredited institutions as those on a list not then in existence, irrespective of the standing of the society which might compile such future list." *Kirschner*, 50 Wn.2d at 135. "The vice in the statute is not that it adopts a standard of accreditation fixed by recognized medical societies, but that there was no such list in existence at the time of the enactment in question." *Kirschner*, 50 Wn.2d at 136.

Courts in other states have held that the legislature may not use CBAs to set prevailing wages and statutes doing so are unconstitutional. *See Wagner v. City of Milwaukee*, 177 Wis. 410, 188 N.W. 487 (1922); *City of Cleveland v. Division 268 of Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emp. of Am.*, 15 Ohio Supp. 76 (1945); *Hunter v. City of Bozeman*, 216 Mont. 251, 700 P.2d 184 (1985).

Here, the industrial statistician acknowledged that under SSB 5493, prevailing CBAs not in existence at the time the legislature passed the bill are relied on. Because the CBAs that the industrial statistician must rely on in setting a prevailing wage did not exist at the time the legislature passed SSB 5493, the legislature failed to provide appropriate standards for the setting of the prevailing wage. Therefore, SSB 5493 violates the first element of the test for proper delegation of legislative power.

2. Procedural Safeguards

AGC also argues that SSB 5493 contains no procedural safeguards against the industrial statistician using data from downloaded CBAs, unsigned or expired CBAs, and pre-hire CBAs to

set prevailing wages, and the State cannot prevent or even detect collusion. We agree with AGC that SSB 5493 lacks procedural safeguards.

In states that use CBAs to determine prevailing wage rates, those states have procedural safeguards that are absent here. *See* N.J. STAT. § 34:11-56.26(9) (2019); MCKINNEY'S LABOR LAW § 220(5)(a), NY Labor § 220 (2020); Haw. Rev. Stat. § 104-34 (1995); *Indpen. Roofing Contractors v. Dep't of Indus. Relations*, 23 Cal. App. 4th 345, 355 (Cal. App. 1994). The State's 50-state survey filed for summary judgment shows that 26 have prevailing wage statutes. Only three of those states—Massachusetts, Ohio, and Hawaii—have laws similar to SSB 5493. Other states have certain procedural protections for which CBAs may be considered in setting the prevailing wage rates.[6] *See* N.J. STAT. § 34:11-56.26(9) (2019); MCKINNEY'S LABOR LAW § 220(5)(a), NY Labor § 220 (2020); *Indpen. Roofing Contractors*, 23 Cal. App. 4th at 355 (Cal. App. 1994).

The amendments of SSB 5493 require that the industrial statistician rely on CBAs when "adopting the hourly wage, usual benefits, and overtime paid for the geographic jurisdiction." Laws of 2018, ch. 248, § 1. Further, the statute does not contain any procedural requirements that specify requirements for a CBA to be valid or applicable to a particular locality or geographical area.

---

[6] These protections include limiting consideration of CBAs or doing so in a permissive, rather than mandatory, manner; allowing consideration of CBAs only if they cover a certain percentage of workers in each locality; or allowing consideration of CBAs only if they are actually "prevailing."

The State argues that the appeal process provides adequate procedural safeguards; however, the appeal process is not meaningful here. WAC 296-127-060(3) provides,

> Any party in interest who is seeking a modification or other change in a wage determination under RCW 39.12.015, and who has requested the industrial statistician to make such modification or other change and the request has been denied, after appropriate reconsideration by the assistant director shall have a right to petition for arbitration of the determination.

However, because SSB 5493 does not contain any procedural protections, there are no specified grounds under which the appeals process would facilitate a change in the prevailing wage rate.

Because SSB 5493 does not contain procedural protections to protect against misuse of CBAs or abuse by private parties, it fails to satisfy the second element of the test for proper delegation of legislative power.

C.  CONCLUSION

RCW 39.12.015 lacks appropriate "standards or guidelines," and it lacks "adequate procedural safeguards." *Barry & Barry*, 81 Wn.2d at 163-64. Therefore, it does not meet the test set forth in *Barry* for the proper delegation of legislative power. *See Barry & Barry*, 81 Wn.2d at 163-64. For these reasons, we agree with AGC and hold that RCW 39.12.015(3) violates the non-delegation doctrine.

No. 54465-2-II

Accordingly, we reverse the superior court's order granting summary judgment to the State and remand for further proceedings consistent with this opinion.

SUTTON, J.

We concur:

, C.J.

LEE, C.J.

WORSWICK, J.